[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 212 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 213 
The only question presented in this cause is upon the construction of the agreement of the eleventh of September, 1846, made by the parties for the sale and purchase of the premises mentioned in the pleadings. The land is there described as "all that certain farm or lot of land now in her (the defendant's) possession, and whereon she resides, and whereof Jacob Martin died seized, containing ninety-six acres, be the same more or less." This is the whole description. The succeeding clause, "for the sum of sixty dollars per acre," c. relates only to the consideration to be paid by the purchaser. In looking at this description without reference to extrinsic facts, it is obvious that the number of acres was not relied upon by the parties as indicating the absolute but only the proximate and probable quantity of the land. The phrase "be the same more or less," shows uncertainty as to the precise quantity, and that neither the vendor nor vendee intended that the sale should be defeated because the true number of acres exceeded or fell short of the number estimated (Rawle on Covts. for title, 258, 259 and cases cited). The phrase is therefore sensible and pertinent in the connection in which it stands, and can not be rejected as surplusage. What then was the land purchased by the plaintiff as defined by this contract? The answer is furnished by the first part of the description above quoted. It was the premises in the possession and upon which the defendant resided, and of which her husband Jacob Martin had died seized. There is nothing ambiguous in this description. For aught that appears, the possession of the defendant was open, definite and notorious. There is no allegation in the pleadings, or pretence any where, that the parties did not understand what land was designated by the description. The deed subsequently *Page 216 
executed and which specified the limits of the property, was accepted by the vendee without any objection that it did not in this respect conform to the previous agreement and understanding of both parties. Indeed the vendor and vendee have never differed as to the boundaries of the premises but only as to the quantity of land embraced in them. The defendant, therefore, was bound to execute and the plaintiff to accept a conveyance of the land within the limits assigned by the agreement. If this is the fair construction of the contract, it substantially disposes of the question under consideration.
The vendee agreed "to pay the sum of sixty dollars per acre for the premises." This covenant must refer to the estimated number of acres previously mentioned, because this was the only data furnished by the contract for a computation of the consideration money. In the language of the contract the vendee was "to pay the purchase money on receiving a deed." But what amount? The agreement implies that the obligations of the respective parties are there defined. The vendor as we have seen, would discharge himself by a conveyance excluding all mention of quantity, but conforming in other respects to the description in the contract. The vendoe was to pay or secure the whole purchase money. No previous act was to be done, no survey was to be made, and if the plaintiff had entered upon the premises with a view to ascertain the quantity by actual measurement, he would have subjected himself to an action of trespass. It is sufficient to say, however, that there is no covenant, express or implied upon the vendor as to quantity, nor any stipulation that the number of acres should be ascertained by the joint or separate action of the parties or either of them. It follows that the vendee must ascertain the amount of the consideration from the number of acres estimated in the agreement and not otherwise. The parties have constantly acted upon this assumption. No survey was made nor any overtures to that effect by any one. The deed was accepted, the purchase money paid and secured upon this basis; and the deficiency which is now the subject of complaint was not, according to the allegation of the plaintiff ascertained until some time *Page 217 
subsequently. This view disposes of the case. It is not claimed that the original agreement was procured by fraud, misrepresentation or mistake. The right of the parties was then established; and although the defendant subsequently and when the deed was executed, "falsely, fraudulently and with knowledge of the fact, inserted in the deed a larger number of acres than was contained in said farm," it would not affect the plaintiff injuriously. The result of the matter would be that the parties in good faith entered into an agreement which the defendant subsequently fulfilled according to the letter and spirit. Fraud in any sense can not be affirmed of such a transaction, whatever might be the motive of the vendor in complying with her covenant. The evidence offered was therefore properly rejected as immaterial, and the judgment for the reasons suggested should be affirmed.