## KING v. BROWN ET AL.

VENDOR AND PURCHASER.—*Mistake.*—*Conveyance by Metes and Bounds.*—In a suit upon the only unpaid promissory note, of a number of such notes, given for the purchase-money of a tract of land sold for a sum in gross and conveyed to the maker by the payee, by a warranty deed, wherein the land is described by metes and bounds, and as containing a certain number of acres, more or less, and in the making of the contract for the sale of such land there was no fraud practised, no mutual mistake nor representation made as to the number of acres, and the land purchased for no particular purpose requiring the number of acres mentioned in the deed, the defendant is entitled to no relief or abatement of price because, on survey of such land, it is found to contain a less number of acres than is specified in the deed.

From the Jackson Circuit Court.

*D. H. Long, Sr.,* and *B. E. Long,* for appellant.

*W. K. Marshall,* for appellees.

PERKINS, J.—Suit upon a promissory note. Answer that the note was given for the last payment of the purchase-money of the land described in the following deed:

" This indenture witnesseth ; that George Fearn, Mattie L. Fearn, Samuel Fearn, Jr., Emma Fearn, George S. King and Harriet L. King, of Carroll and Trimble counties, in the state of Kentucky, convey and warrant to Kennedy Brown, James B. Curtis of Jennings county, and Alexander A. Davison of Jackson county, in the state of Indiana, for the sum of twenty thousand dollars, the following real estate in Jackson county, state of Indiana, to wit: A part of the north fraction of section twenty-one, (21,) and the north fraction of section twenty-two, (22,) township six, north, of range five, east, and bounded as follows: commencing at a stone at the north-west corner of said section twenty-two, thence south with the west line of said section to a stone at the half-section corner; thence west with the half-section line of said section twenty-one, (21,) to a stone making the corner of lands heretofore sold by C. L. Dunham, to Henry Fee-myer; thence south with the east line of said land to

White river; thence with White river to where the north line of said section twenty-two, prolonged eastward, would strike said river; thence west with said north line of section twenty-two, to the place of beginning, containing four hundred and fifty-one acres, more or less. This convey-ance is taken subject to the tax of 1870, which the grantees are to pay, in addition to the purchase-money. In witness whereof," etc. Signed by the grantors.

The answer proceeds to say that the defendants admit the execution of the note sued on, and the deed of con-veyance of the tract of land therein described for the sum of twenty thousand dollars, "containing, as was repre-sented, four hundred and fifty-one acres," but they aver that said sale was at and for the price of forty-four dollars and twelve and one-half cents per acre, and that the sale of said tract of land was by the acre, at the price per acre aforesaid; that said note was given for a part of the purchase-money to be paid for said land, and upon no other consideration, to wit: the undivided one-third part of said land, owned by said Harriet L. King, and that the balance due on said note is the last of the price to be paid for said third; that afterwards, upon a correct survey and measurement of the land, it was ascertained that there were but three hundred and ninety-seven acres in the parcel conveyed. Said defend-ants, therefore, aver that they have already paid for more acres of land than were contained in said tract, and that there was and is no consideration for the part of the note now claimed to be due and unpaid.

The defendants added a second paragraph, averring that there was no consideration for the note sued on.

Demurrer to the first paragraph of answer for want of sufficient facts to constitute a defence, overruled, and ex-ception to the ruling reserved. Reply in denial; trial by the court; finding for defendants; motion for a new trial; overruled; and judgment. The grounds alleged for the

new trial were, that the finding was contrary to law and unsustained by the evidence.

Two errors are assigned in this court.

1. Overruling the demurrer to the first paragraph of answer.

2. Overruling the motion for a new trial. The evidence is in the record.

We will first direct our inquiries to the question whether the court erred in overruling the demurrer to the first paragraph of answer. The answer alleges that the defendants purchased the tract of land described in the deed by monuments and boundaries—that they agreed to pay twenty thousand dollars for the tract; that they purchased the land by the acre; that they did not know the number of acres, but the number was estimated at four hundred and fifty-one, which multiplied by the price per acre gave the sum of twenty thousand dollars;—that it appeared, afterwards, by a survey, that there were but three hundred and ninety-seven acres, being a deficiency of fifty-four acres, near thirteen acres to the hundred.

It is not averred that the land was purchased for any particular purpose, rendering the precise number of acres an essential inducement to the purchase. No fraud is charged; no mutual mistake, as in *Solinger* v. *Jewett,* 25 Ind. 479; nor is any representation, innocent or otherwise, alleged to have been made by the grantors, or either of them. The answer recites, " as was represented," but it does not disclose by whom nor to whom the representation was made, nor how it was made, or that the purchasers were induced by it to omit to procure a survey of the land. It seems to us the court erred in overruling the demurrer to the first paragraph of answer. But, this is not very important, as we are clear that the judgment is wrong upon the evidence, and that a new trial should have been granted.

Kennedy Brown, the first and only witness for the de-

fence, testified that the note in suit was given for the last
payment of purchase-money for the land described in the
deed. (The deed and note were given in evidence;) that
the contract for the purchase of the land was made by
witness, acting for himself and his codefendants, with
Samuel Fearn, Jr., acting for himself and his co-grantors.
Before the trial was made, (but how long before is not
stated,) Fearn offered the land to them for fifty dollars an
acre; said there were four hundred and fifty-one acres in
the tract. Afterwards, he saw Fearn again, and he
then offered to take forty-five dollars an acre; this was
before the trial, (but how long before does not appear.)
Shortly before the trade was made, witness saw Fearn in
Kentucky, and in talking we counted the land at forty-
five dollars per acre; it made twenty thousand two hun-
dred and ninety-five dollars, but he finally said he would
throw off the two hundred and ninety-five dollars, and
make it even twenty thousand if I would take the land.
I then agreed, verbally, to take the land at twenty thou-
sand dollars. We were buying by the acre all the time.
The other parties were not present. June 16th, 1870, we
met again and the trade was concluded, deed made, and
notes given. George and Samuel Fearn, Curtis, Davison
and myself were present. I understand land falls short
fifty acres. I thought this last note had been paid, as we
left money at Madison Bank to pay it. [This was three
years after the purchase of the land. The note was pay-
able three years after date.] I may have asked the
grantors to strike out the words more or less from the
deed, and Fearn may have replied that he would not;
that he got his deed that way and would only make his
deed the same way. They are honorable gentlemen, and
there may have been such conversation, but I do not re-
member it. I don't know that anything was said just at
the time of the purchase and making of the deed about
purchasing by the acre. Fearn said he thought the farm
had four hundred and fifty-one acres, as his deed called for

that quantity, more or less, but he had never had it surveyed. No different arrangement was made after Fearn agreed to strike off the two hundred and ninety-five dollars and take twenty thousand dollars for the farm. It was also a part of our agreement, at that time, that we were to have the growing crops on the farm and pay the taxes. This agreement was made at the time the trade was concluded. "It was all one agreement. When we agreed to purchase the land at twenty thousand dollars, we were to have the crops and pay the taxes." Davison and myself examined the land before we concluded the trade. W. W. Wamsley and J. M. Attkinson went with us to see the land. Attkinson then lived on the land. Wamsley knew it well; had been raised on it. His father formerly owned it. We went to look at the land with a view to purchasing it. We took the statement of Attkinson and Wamsley about it.

The plat and field notes made by the surveyor, showing the quantity and location of the land, the quantity being four hundred and ten and a half acres, were given in evidence, and the defendant rested.

*Samuel Fearn, Jr.*, for the plaintiff, testified that he made the sale of the farm to the defendants, in bulk, for twenty thousand dollars; that no representation as to the number of acres was made at the time of the sale, and that he had repeatedly told Brown that the tract had never been surveyed. The sale was not made by the acre, but in a body, for the sum of twenty thousand dollars.

*George Fearn* testified that he and Brown and Curtis were present when the deed was written; and Brown insisted that the words "more or less" should be left out. I objected, for the reason that we had never surveyed the land, and did not know how many acres it contained; that our deed called for four hundred and fifty-one acres more or less, and I did not propose to convey any more land than we had title to.

The mortgage given on the land to secure unpaid purchase-money, containing the same description as the deed, and a deed from Samuel Fearn, executor, and one from Cyrus L. Dunham, former owners of the land, both containing the same description, with the words "more or less," were given in evidence.

We have given all the material testimony touching the sale and purchase of the farm. The first question to be decided is, was the sale of the farm by the acre, or in bulk for a gross sum? We think no one can read the evidence and come to any other conclusion than that the farm was sold for a gross sum, as a tract containing four hundred and fifty-one acres, more or less. The owners, at first, asked fifty dollars an acre; afterwards they fell to forty-five dollars an acre; afterwards, they agreed to take twenty thousand dollars for the farm. As yet there is no contract concluded. Afterwards the parties meet and a contract is concluded, not, it would seem, upon terms previously proposed, but upon new terms, viz., that the purchasers were to have the farm and the crops growing thereon for twenty thousand dollars, subject to the taxes of the current year. Upon these terms the sale and purchase were concluded, the deed executed and the purchase-money paid or secured. In the language of the Chancellor of New Jersey, in concluding his opinion in *Weart* v. *Rose*, 1 Green, N. J. 290, we may say that "whatever the previous negotiations may have been, the contract eventually made was a contract for the sale of a specific tract, not by the acre but in gross, at a stipulated price for the whole farm owned and occupied by the vendor. The case is strongly analogous to that of *Stebbins* v. *Eddy*, 4 Mason 414, and in principle is virtually controlled and decided by it."

When the parties met on the 16th of June, there was no binding obligation upon either of them touching the purchase and sale of the land afterwards conveyed. Nothing was then reduced to writing. Either party

could decline to proceed a step further.   Then and there, if not before, the owners of the land informed the defendants that they had no certain knowledge of the number of acres in the tract of land they had been talking about trading for;—that they could not represent to them that there were four hundred and fifty-one acres, or any definite number.   They also assured the defendants that they, the plaintiffs, would not make a deed for the land containing a warranty of that or any specified number of acres ;. but still no one seems to have suggested any other sum than twenty thousand dollars as the price to be paid for the land.

The defendants might then, without being guilty of any breach of faith or subjecting themselves to any action for breach of contract, have declined to proceed further in the business, but they did not.   They made the purchase at twenty thousand dollars.   Surely the defendants can not say, under these circumstances, that they purchased the farm, relying on a representation, made by the grantors, that it contained four hundred and fifty-one acres, or that they purchased it by the acre.

See *Faure* v. *Martin,* 7 N. Y. 210.   If the sale in the case before us was by the acre, at what price per acre, we may ask, was it made?   The answer avers that it was made at forty-four dollars and twelve and one-half cents per acre, but there is not a particle of proof tending to sustain the averment.

Having determined that the sale was one in bulk, for a gross sum, and it appearing clearly by the evidence that there is a deficiency of forty acres and a half in a tract described in the deed as containing four hundred and fifty-one acres, more or less, being about one-tenth, the next question arises, are the purchasers entitled to a corresponding deduction from the purchase-money agreed to be paid for the land?

1 Sugden on Vendors, p. 490, says, on this point: "where the lands *in a conveyance* are mentioned to contain so

many acres by estimation, or the words 'more or less' are added, if there be a small portion more than the quantity, the vendor can not recover it; and if there be a small quantity less, the purchaser can not obtain any compensation in respect of the deficiency; and even a large excess or deficiency has not been considered a ground for relieving a vendor or purchaser."

Such is the law in cases where there is an absence of fraud, misrepresentation or other equitable circumstances affecting the particular case; as for example, where the land is bought for a particular purpose, as is known by both parties, rendering the number of acres of the essence of the purchase; though probably such a state of facts would bring the case within the definition of fraud. *Cravens* v. *Kiser*, 4 Ind. 512. In the case before us, it is perfectly obvious that there was no fraud, representation or special purpose in purchasing, that rendered the given number of acres of the essence of the contract. See *Belknap* v. *Sealey*, 14 N. Y. 143; *Marvin* v. *Bennett*, 26 Wend. 169; *Noble* v. *Googins*, 99 Mass. 231; *Coughenour's Adm'rs* v. *Stauft*, 77 Pa. State, 191. Was the deficiency, then, so great as to entitle the purchaser to compensation? This question need not be discussed. No case can be found, where the purchase and sale were free from misrepresentation, fraud or mistake, that so small a deficiency, in so large a tract, has been held sufficient to entitle to relief. *Snow* v. *Chapman*, 1 Root, 528. Nor is the deficiency large enough to justify, of itself, an inference of fraud or mistake, in the legal sense of the term. *Jennings* v. *Monks' Ex'r*, 4 Met.(Ky.) 103; Sugden on Vendors, p. 492, and cases cited. We may remark that if the sale had been by the acre, and the parties, to avoid the trouble of a survey, or without any particular reason, had agreed to determine the amount to be paid for the land, by estimating the acres at a certain number, neither party knowing the true number, they would have been bound by such estimated number, whether it proved to be the true one or other-

wise. *McCrea* v. *Longstreth*, 17 Pa. State, 316; *Herbert* v. *Stanford*, 12 Ind. 503.

Reversed, with costs, and remanded for further proceedings in accordance with this opinion.