Docter and another vs. Furch and others.

Docter and another, Respondents, vs. Furch and others, Appellants.

*December 13, 1889 — March 18, 1890.*

*(1) Demurrer:* Res adjudicata. *(2) Land contract: Specific performance: Abatement from price for deficiency in quantity.*

1. An adjudication sustaining a demurrer *ore tenus* on the ground that the complaint does not contain certain essential allegations, is no bar to another action in which such defects in the complaint are supplied.
2. In an action to enforce specific performance of a contract for the sale, for a gross sum, of "49 acres of land, with buildings and im-

Docter and another vs. Furch and others.

provements thereon, . . . said described property being the same now occupied by" the vendor, it appeared, among other things, that one of the plaintiffs drew the contract some time prior to its execution; that the plaintiffs were well acquainted with the land in question, which was in one tract and enclosed; and that if the vendor stated that it contained forty-nine acres, that statement was not intended as a guaranty, and neither of the plaintiffs had any reasonable ground for relying upon it as such. *Held,* that the reference in the contract to the number of acres was by way of description, and that the plaintiffs were not entitled to any abatement from the purchase price by reason of a deficiency in the quantity.

APPEAL from the Circuit Court for *Milwaukee* County.
The following statement of the case was prepared by Mr. Justice CASSODAY:

July 14, 1885, one Caroline Hellberg owned and occupied a farm in the town of Wauwatosa, Milwaukee county, described, and on that day agreed to sell and convey the same to the plaintiffs, and gave to them, on that day, an agreement in writing to that effect, as follows:

"[EXHIBIT A.]

"Received of Messrs. *Jacob Katz* and *Adolph Docter* the sum of One hundred Dollars as part purchase money for 49 acres of land, with buildings and improvements thereon, situated in the Town of Wauwatosa, state of Wisconsin. Said described property being the same now occupied by me. Whole amt. of said purchase money is Twenty Thousand and three hundred Dollars. At the delivery of a warranted, perfect Deed, Two Thousand Dollars to be paid cash. The balance of Eighteen Thousand Three hundred Dls. payable in ten years from date of Deed, with 4½ % (four and one-half %) interest. Said Property situated in Town of Wauwatosa, and at present occupied by me & I promise to deliver Deed in six weeks. Above Amount in-

cluded also all the two horses, wagons, and all the farmer Machienerie and Tools, etc., etc.

"*Dated, July 14, 1885.*          CAROLINE HELLBERG.

"Witness: LUCY TOOLE.

"ANDREW SCHNEIDER.

"Recorded July 14th, 1885."

August 13, 1885, the plaintiffs served on the said Caroline a notice in writing, marked "Exhibit B," and therein, in effect, requested her to furnish the legal description of the forty-nine acres mentioned in Exhibit A, and further stating that upon such description being furnished and the deed in Exhibit A executed, covering forty-nine acres, they would comply with the conditions of that exhibit, but that, if the property owned and occupied by her contained less than forty-nine acres, they thereby offered to pay her such proportion of the whole amount of the purchase money mentioned in Exhibit A as the number of acres actually contained in said farm bore to the forty-nine acres, according to the terms specified in Exhibit A, and that, if she failed to perform her agreement contained in Exhibit A, they would take steps to enforce the specific performance thereof.

September 5, 1885, the plaintiffs commenced an action against Caroline Hellberg, in the county court for Milwaukee county, to enforce the specific performance of the agreements on her part contained in Exhibit A. An answer was served therein, and upon the hearing thereof, November 19, 1885, and upon demurrer *ore tenus*, the complaint in that action was dismissed, with costs, and judgment entered therein accordingly. Afterwards, and on March 16, 1886, on appeal to this court, that judgment was affirmed. 65 Wis. 415.

April 30, 1886, the said Caroline Hellberg died, seized of the legal title of said farm, leaving her surviving the defendants, *Amelia Furch, Louis, Bertha,* and *Rudolph Hell-*

*berg*, all being her children and only heirs at law. On or about May 7, 1887, this action was commenced for the specific performance of the said agreement, Exhibit A, against said heirs at law and the husband of said *Amelia*. The amended complaint in this action alleges, among other things, in effect, the making of said agreement, Exhibit A, July 14, 1885; that on that day, and previously, said Caroline falsely stated and represented to the plaintiffs that the farm contained forty-nine acres of land, which statements and representations were fully believed by the plaintiffs and relied upon by them; that, as a matter of fact, the farm contained only thirty-two and one half acres; that the improvements thereon were estimated at the value of $3,000, and the personal property thereon estimated at $300; that the plaintiffs were induced to make said agreement by the false statements and representations aforesaid; that about ten days thereafter the plaintiffs learned for the first time that the farm only contained about thirty-two and one half acres; that the said Caroline was not the owner of any other lands in said town; that August 25, 1885, the plaintiffs tendered to said Caroline Hellberg the sum of $1,900, and made the demand mentioned in Exhibit B, and offered to perform as therein indicated, which she refused to do; that the plaintiffs have been at all times since the making of Exhibit A, and still are, ready and willing to accept a conveyance of the land actually owned and occupied by said Caroline at the time of making Exhibit A, and to pay and secure to be paid, according to the terms of said Exhibit A, the full consideration therein specified and agreed to be paid and secured, less such sum as ought in justice and equity to be deducted and abated therefrom by reason of the deficiency in the number of acres of land so actually occupied and owned by said Caroline as stated, and thereby offer to accept such conveyance, and to pay and secure to be paid, according to the

terms of said agreement, such sum as the court should determine they are justly and equitably bound to pay to the said heirs and legal representatives under said agreement, after making due allowance and abatement as stated; and demanded judgment accordingly.

July 28, 1887, all the defendants except *Fritz Furch* and *Rudo¹ph Hellberg* answered, which answer consisted largely of admissions and denials, and specifically denied any and all of the alleged false statements or representations, and expressed a willingness to convey the farm upon the performance by the plaintiffs of their agreement as contained in Exhibit A, and also pleaded said former judgment in bar of the action. May 31, 1887, the defendant *Fritz Furch* demurred to the complaint on the ground that it did not state facts sufficient to constitute a cause of action as to him, which demurrer the court sustained, and dismissed the action as to him.

At the close of the trial, the circuit court, in addition to the facts stated, found as matters of fact in effect that July 14, 1885, said Caroline induced the plaintiffs to accept of and agree to said Exhibit A by the false statements and representations alleged as to the number of acres in the farm; that the plaintiffs believed and relied upon such statements and representations; that at that time she well knew that the farm only contained thirty-four and seventeen one-hundredths acres, and that such statements were made by her with intent to defraud and deceive the plaintiffs; that the improvements on the farm were of the actual value of $3,000 and no more, and the personal property thereon of the actual value of no more than $300.

And as conclusions of law the court found that the plaintiffs were entitled to judgment adjudging that the defendants and each of them specifically perform the agreement of Exhibit A, and execute and deliver to the plaintiffs a

warranty deed of the premises therein described, upon their payment of $1,900 in cash, and the execution and delivery of a purchase-money mortgage to them upon said premises to secure the payment, in ten years from July 14, 1885, of $13,154.94, bearing interest at the rate of four and one half per cent. per annum; that the plaintiffs were entitled to an abatement or deduction from the price stipulated in Exhibit A of $5,145.06, by reason of the deficiency of fourteen and eighty-three one-hundredths acres in the land owned and occupied by said Caroline at the time of executing Exhibit A; and other matters appropriate thereto,— and ordered judgment according to such findings. From the judgment entered thereon the defendants appeal.

For the appellants there were briefs by *Fiebing & Killilea*, attorneys, and *Pinney & Sanborn*, of counsel, and a separate brief by *Fiebing & Killilea*, attorneys, and *R. N. Austin*, of counsel, and the cause was argued orally by *Mr. Austin*. They contended, *inter alia*, that the plea of former adjudication should have been sustained by the court. *Pomeroy v. Crocker*, 3 Pin. 378; *Parker v. Pomeroy*, 2 Wis. 112; *Wright v. Sperry*, 25 id. 617; *Noonan v. Orton*, 27 id. 300. When a question, whether of law or fact, is once decided, on demurrer or otherwise, between the same parties, it becomes *res adjudicata*, binding the parties and the court. *Du Pont v. Davis*, 35 Wis. 631; *Downer v. Cross*, 2 id. 371; *Cole v. Clarke*, 3 id. 323; *Hungerford v. Cushing*, 8 id. 324; *Eastman v. Harteau*, 12 id. 267; *Reed v. Jones*, 15 id. 44; *Mowry v. First Nat. Bank*, 66 id. 539; *Fire Department v. Tuttle*, 50 id. 552; *Marshall v. Pinkham*, 73 id. 401; *Bank of New London v. Ketchum*, 66 id. 428; *Beloit v. Morgan*, 7 Wall. 619; *Seddon v. Tutop*, 6 T. R. 607; *Shepardson v. Cary*, 29 Wis. 34, 43; *Henderson v. Henderson*, 3 Hare, 115; *Birckhead v. Brown*, 5 Sandf. 135. The assertion of quantity in a deed must yield to a description by metes and

bounds or by *name* or numbers. When the quantity is mentioned in a description, without an express covenant that it contains that quantity, the whole is considered as mere description. *Stanley v. Green*, 12 Cal. 164; *Jackson v. Moore*, 6 Cow. 706; *Hall v. Mayhew*, 15 Md. 551; *Miller v. Bentley*, 5 Sneed, 671; *Wright v. Wright*, 34 Ala. 194; *Dalton v. Rust*, 22 Tex. 133; *Jennings v. Monks' Ex'r*, 4 Met. (Ky.), 103; *Llewellyn v. Jersey*, 11 Mees. & W. 183; *Jackson v. Defendorf*, 1 Caines, 493; *Snow v. Chapman*, 1 Root, 528; *Commissioner v. Thompson*, 4 McCord, 434; *Ufford v. Wilkins*, 33 Iowa, 113; *Robinson v. Kime*, 70 N. Y. 147; *Drew v. Swift*, 46 id. 207; *Higginbotham v. Stoddard*, 72 id. 94–99; *Buffalo, N. Y. & E. R. Co. v. Stigeler*, 61 id. 348; *Lyman v. Gedney*, 114 Ill. 388; *Abbott v. Pike*, 33 Me. 204; *Heaton v. Hodges*, 30 Am. Dec. 731, and note.

For the respondents there were briefs by *Flanders & Bottum*, and the cause was argued orally by *J. G. Flanders* and *Joshua Stark.* To the point that respondents were entitled to a specific performance of the contract and to an abatement in price on account of the deficiency, they cited *Powell v. Elliott*, L. R. 10 Ch. App. 424; *M'Coun v. Delany*, 3 Bibb, 46; *Walling v. Kinnard*, 10 Tex. 508; *Hill v. Buckley*, 17 Ves. 394–401; *O'Connell v. Duke*, 29 Tex. 299; *Harrison v. Talbot*, 2 Dana, 258; *McKenzie v. Hesketh*, L. R. 7 Ch. Div. 675; *Blessing's Adm'rs v. Beatty*, 1 Rob. (Va.), 287; *Harrell v. Hill*, 19 Ark. 102; *Couse v. Boyles*, 4 N. J. Eq. 212; *Melick v. Dayton*, 34 id. 245; *Paine v. Upton*, 87 N. Y. 327; *Darling v. Osborne*, 51 Vt. 148; *Watson v. Hoy*, 28 Gratt. 698; *Camp v. Norfleet's Adm'x*, 83 Va. 380; *Prichard v. Evans*, 31 W. Va. 137; *Mendenhall v. Steckel*, 47 Md. 453; *Seegar v. Smith*, 78 Ga. 616; *King v. Wilson*, 6 Beav. 124; *Conrad v. Schwamb*, 53 Wis. 372, 378; *Tyner v. Cotter*, 67 id. 482, 488–9; *Tyler v. Anderson*, 106 Ind. 185; *Howk v. Pollard*, 6 Blackf. 108; *Cravens v. Kiser*, 4 Ind. 512;

*Thomas v. Beebe,* 25 N. Y. 244; *Mitchell v. Zimmerman,* 4 Tex. 75; *Cabot v. Christie,* 42 Vt. 121.

The following opinion was filed January 7, 1890:

CASSODAY, J. It is urged that the adjudication in the former case was a bar to this action. The only question there involved was the sufficiency of the complaint upon demurrer *ore tenus. Docter v. Hellberg,* 65 Wis. 420. It was in effect held that an omission from the complaint of necessary averments was fatal, and could not be supplied by presumption, nor by the answer. *Ibid.; Doud v. W., P. & S. R. Co.* 65 Wis. 108. In other words, the court determined the question of law presented upon such demurrer the same as though no answer had been served. This being so, we are barred from considering whether the relief granted or the questions determined in this action are "consistent with the case made by the complaint and embraced within the issues" in the former action, within the meaning of these words quoted from the statute. Sec. 2886, R. S.

It is not only a cardinal but a familiar rule of pleading that in an action to enforce the specific performance of a contract containing mutual covenants or agreements it is, among other things, essential for the plaintiff to allege performance, or tender or offer or willingness to perform on his part, or a valid excuse for his nonperformance. So important is this rule that the statute has expressly relieved parties from alleging the specific facts showing such performance, and, in lieu thereof, allows them to allege "generally, that the party duly performed all the conditions on his part." Sec. 2674, R. S. The complaint in the former case contained no such general statement, nor any allegation of performance, or tender or offer or willingness to perform the agreement actually made on the part of the

plaintiffs. It did allege the notice and request contained in exhibit B, mentioned in the foregoing statement. It also alleged that the number of acres of land mentioned in the agreement was considerably more than the amount owned and occupied by the vendor, and offered to pay and secure what the land so owned and occupied " would amount to, computed at the same rate per acre as forty-nine acres for twenty thousand three hundred dollars, viz., at $414.28 per acre," upon the conveyance of the farm so occupied as agreed. But the complaint in that action contained no allegation nor intimation that Mrs. Hellberg ever made such a contract, and hence that action was simply to compel her to convey her farm upon terms which she had never agreed to. Accordingly it was held in that action, upon demurrer, in effect, that the complaint stated no cause of action that would justify a court of equity in enforcing such conveyance upon such proposed conditions. *Docter v. Hellberg*, 65 Wis. 422.

The only question there presented for determination, and hence determined, was one of pleading. The court, however, did not undertake to determine that such conveyance could not be enforced upon a complaint containing appropriate and sufficient allegations and sustained by proofs. On the contrary, the question of the right of the plaintiffs to enforce a conveyance of the farm upon the payment of a less amount than that mentioned in the agreement, by reason of the alleged deficiency, was purposely left open. The opinion in that case went further, and, upon the assumption that such action might be maintained upon proper pleadings and proofs, inaptly attempted to state a rule whereby the amount of such abatement from the purchase price might be ascertained. 65 Wis. 424. That rule is more definitely indicated in *Semple v. Whorton*, 68 Wis. 636, 637. We conclude that the adjudication in the former action

was no bar to the determination of this case upon the merits, if the plaintiffs were otherwise entitled to recover.

In the opinion in the former case it was said: " The agreement was to convey the land, buildings, and improvements then occupied by her in the town. It was the land so occupied, and the whole of it, that was to be so conveyed. No reference was made in the writing to any land not so occupied at the time. Such occupation, so referred to upon the face of the agreement, purported to be an existing, extrinsic fact, the proof of which would give certainty to the description. . . . It will be observed that the number of acres mentioned in the agreement is not by way of limitation nor restriction. The agreement does not purport to be for the conveyance of forty-nine acres from a larger tract. The number of acres mentioned in the agreement purports to be descriptive, but in no way aided the description. The agreement was simply to convey the land then occupied by the defendant,— nothing more. If the land so occupied did not contain as many acres as mentioned in the agreement, then such mention, to the extent of the deficiency, was a false assertion. Assuming it to have been false, yet as it in no way aided the description, and the land was otherwise sufficiently described, it cannot frustrate the agreement. . . . But the more serious question is whether such mention is to have the effect of a written guaranty or covenant that the farm so occupied did in fact, at the time, contain the number of acres mentioned." That question was there left open, but is here presented upon the merits — strengthened or weakened by the evidence in the record.

It may be questionable whether the oral testimony makes the case any more favorable to the plaintiffs than the false assertion as to the number of acres contained in the writing itself. It seems to be established beyond all reasonable controversy that the farm originally contained forty-two

and seventeen one-hundredths acres; that April 4, 1883, Mrs. Hellberg conveyed three acres from the northwest corner thereof to Hoeft, and the deed thereof was recorded April 5, 1883; that June 11, 1884, she conveyed five acres from the southeast corner thereof to Sarnow, and the deed thereof was recorded August 21, 1884; that each of those pieces was fenced off from said farm, and buildings placed thereon, and occupied by said grantees respectively, with their families, soon after acquiring the same; and that said pieces of land respectively continued to be so fenced and occupied by such grantees before, down to, and at the time of the execution of the agreement in question, July 14, 1885; that the conveyance of those two pieces of land left Mrs. Hellberg the owner and occupier of only thirty-four and seventeen one-hundredths acres at the time of the making of that agreement; that the public highway ran along upon the northeasterly line of that land; and that the buildings thereon were located near that road.

The plaintiff *Katz* testified in behalf of the plaintiffs to the effect that at the time of taking the agreement he "relied upon the statement *therein,* that the property did contain forty-nine acres of land;" that he had been engaged quite largely in buying and selling real estate; that he lived about two miles east of the land in question; that he used to go past the farm "probably a couple of times a year;" that he was at the farm a few days before July 14, 1885, and also on that day; that at those times both plaintiffs "went on the farm," and "looked over the farm;" that Exhibit A was in his *(Katz's)* handwriting. The plaintiff *Docter* testified to the effect that he believed in the statements given by Mrs. Hellberg, and "fully believed in the statement in the receipt that this land contained forty-nine acres," and relied upon it; that he had bought and owned other suburban property; that he had known this farm for twenty years; that he had been in the habit of going past

the farm once or twice a week; that he had passed it more than a hundred times; that he went to look at the farm with reference to buying it about two weeks before the execution of the agreement, and at that time looked at it from the street; that afterwards he went on the farm to the first barn, but hardly any east of the barn; that he did not go to the south line fence; that he did not remember whether he went to the east line of the farm; that he did not go to the west line, but saw it; that he relied upon the statements in the receipt that the plaintiffs "were buying the property that was then occupied by Mrs. Hellberg." Another witness testified for the plaintiffs to the effect that Mrs. Hellberg told him she had sold her farm to *Katz*, the day before, for $20,000; that it contained forty-nine acres; that she guessed she had been a little too smart for the plaintiffs; that she thought she knew enough to watch her own interest; that she had played a little game or trick on them.

In addition to the facts stated respecting the situation of the farm, the highway, the buildings, the fences, and the occupation of the adjoining lands, it appears from the testimony on the part of the defendants that the south fence, and in fact the whole piece of land, could be seen from at or near the house; that the plaintiff *Katz* inquired of one of the defendants as to the number of acres in the farm in 1881, and before the conveyance of the two pieces mentioned, and was told that there were about forty-four acres.

A witness named Sweers, residing in Chicago at the time of the trial, and to whom the plaintiff *Docter*, a few weeks before the trial, sent a letter, evidently calculated to prejudice him against the defendants, by stating that they were indebted to him in the sum of $100, and to secure his testimony in favor of the plaintiffs as to matters stated in the letter, and offering to forward money and keep him free of all expenses, and whom the other plaintiff, *Katz*,

concedes to have interviewed at Chicago with a view of obtaining his evidence upon the trial, but without satisfaction, testified to the effect that, after he received the letter from *Docter*, *Katz* called upon him in Chicago, and spoke of the letter, and wanted it, and as to what the witness remembered, but which he declined to state until " *subpœnaed* in court;" that *Katz* then offered to " pay all expenses and everything else," and, provided the witness "needed money, he would pay" him money, which the witness declined to receive. The witness further testified to the effect that he was at Mrs. Hellberg's at the time the agreement was signed by her; that he heard *Katz* reading the contract to her; that, when he had finished reading it, he asked her to sign it, to which she at first objected, without seeing her attorney; that *Katz* then asked her about the forty-nine acres; that she said she did not know how much land she did have, and that it better be surveyed; that *Katz* replied that would be all right,—that she should sign it, and "he would add to it, more or less than forty-nine acres."

The witness to the contract, Mrs. Toole, testified to the effect that she was at Mrs. Hellberg's at the time the agreement was signed; that *Katz* asked Mrs. Hellberg how many acres there were in the farm; that she said she could not tell; that her son, one of the defendants, stated that there were so many in one place, and so many in another, and they counted them up, making forty-six or forty-nine acres, and *Katz* asked her·if that was correct; that "Mrs. Hellberg said she would not say it was correct, for she did not know; that she would rather he would get a surveyor and have it surveyed, and then it would be right;" that " *Mr. Katz* said he did not care about getting it surveyed;" that " he would call it so many acres, more or less."

In rebuttal, the plaintiffs severally denied anything being said about " more·or less," or having the land surveyed, or counting up the number of acres, or Mrs. Hellberg say-

ing she did not know the number of acres; and stated that, upon her being asked the number of acres, she said forty-nine. *Katz* also testified, to the effect that before he went to Mrs. Hellberg's, at the time of making the contract, he "made the receipt out at home, but only left out the purchase price and number of acres, and the agreement how much we should pay on" the purchase; that they were filled out at Mrs. Hellberg's; that "the acres and the purchase price must have been written out there in a different kind of ink," and with a different pen, as he "did not take any ink along;" that "everything that relates to the purchase price and the contract was written out there, and the other things were written at home."

The original contract, Exhibit A, which *Mr. Katz* thus claims to have written, is in the record. It is upon the same paper, and immediately follows *Mr. Katz's* printed letter-head. A careful inspection of it convinces us all that the words "Received of Messrs. *Jacob Katz* and *Adolph Docter* the sum of one hundred dollars, as part purchase money for 49 acres of land, with buildings and improvements thereon, situated in the town of Wauwatosa, state of Wisconsin," and each and every of them, including "49 acres," were written at the same time and with the same pen and the same ink, and hence, according to the admission of *Mr. Katz*, must have been written at his home before going to Mrs. Hellberg's. This, of itself, is a flat contradiction of both of the plaintiffs as to Mrs. Hellberg's alleged statements and representations to them, at the time of executing the contract, that there were "forty-nine acres," in the farm, and that *Katz* thereupon wrote "49" in the contract. There is no evidence in the record that she ever made any such statement or representation at any former time. Such inspection of the original contract and admission of *Katz*, moreover, strongly corroborates the testimony of the witnesses Sweers and Toole to the effect that, at the time of

the execution of that paper, Mrs. Hellberg expressly disclaimed any knowledge as to the number of acres in the farm, and suggested a survey, if the plaintiff desired to know, and that *Katz* said he did not care for a survey, and would insert in the contract the words " more or less."

We cannot forget that both of these witnesses were disinterested; that *Docter's* letter to, and *Katz's* interview with, Sweers, viewed in the most favorable light for the plaintiffs, must be regarded as their indorsement of his integrity and honor; otherwise, he would have to be regarded as a witness who successfully resisted their attempt to corrupt. Moreover, we cannot forget that Mrs. Hellberg was at the time a widow; that she died before the trial, and hence was unable to give her version of the transaction; that both of the plaintiffs are apparently men of superior intelligence and ability, with large experience in business affairs; that they were both for many years familiar with the premises in question, which were situated along the side of a public highway over which they had for many years frequently traveled; that the adjoining lands were fenced and occupied by other buildings and families; that the premises in question were fenced in at the time, and their extent and boundaries manifest to any beholder who desired to know; that there is no claim nor pretense that the plaintiffs, or either of them, were ever deceived or misled as to the extent of the farm in any direction, nor as to any boundary thereof. On the contrary, we must assume that in making the contract they understood they were buying, and only intended to buy, the premises then occupied by Mrs. Hellberg. Besides, it is almost incredible to believe that men so shrewd as the plaintiffs, in the purchase of land so valuable as the farm in question, would, if the amount of the purchase price mentioned was to be dependent upon the existence of the number of acres of land named in the contract, rely upon the simple statement

as to the number of acres made by a widow, under the circumstances claimed by them.   On the contrary, they would have put a stipulation to that effect in the written agreement drawn by *Mr. Katz*, apparently to suit himself, or else more specific inquiries would have been made as to the widow's sources of knowledge.

Upon all the parol evidence in the case, we have very serious doubt whether Mrs. Hellberg ever stated to the plaintiffs, or either of them, that the farm contained forty-nine acres of land.   But, assuming that she did, still we are satisfied that such statement, if made at all, was merely incidental and by way of description or estimation of the farm, and without any intent or purpose to agree or guaranty that it in fact contained that number of acres.   Assuming that she did so casually make such statement, still we are convinced, by a clear preponderance of the evidence, weighed in the light of all the circumstances and probabilities in the case, that neither of the plaintiffs ever had any reasonable ground for relying upon any such statement, and hence that neither of them ever acquired any right, in law or equity, to an abatement by reason of such reliance. The result is that the plaintiffs are entitled to no abatement from the amount of the purchase price named in the contract, unless they are entitled to it as a matter of law from the mere recital of the number of acres in the contract itself.   The contract calls for a warranty deed.   Had such a deed been given instead of the contract, and the plaintiffs at the same time had made the cash payment and given back the mortgage mentioned in the contract, and then sought an abatement from the purchase price by reason of the covenants in such deed, their rights would certainly have been as great as they are now under the contract. In fact, some courts of equity are inclined to treat the vendee under a contract with less favor than the grantee under such deed.   The cases where a remedy has been

sought on the covenants are numerous,· but not entirely harmonious.

It was held in Connecticut, at an early day, that "if a deed grants all the lands within certain bounds, and calls it more than it is, the covenants extend only to the land within the bounds." *Snow v. Chapman,* 1 Root, 528. The same principle has frequently been sanctioned by other courts. *Howe v. Bass,* 2 Mass. 380, 3 Am. Dec. 59; *Powell v. Clark,* 5 Mass. 355, 4 Am. Dec. 67; *Perkins v. Webster,* 2 N. H. 287; *Beach v. Stearns,* 1 Aikens, 325; *Melick v. Dayton,* 34 N. J. Eq. 250. The same principle was applied in New York, at an early day, to a bond for a deed, and subsequently sanctioned in the cases of a lease and a contract. *Mann v. Pearson,* 2 Johns. 37; *Jackson v. Barringer,* 15 Johns. 471; *Faure v. Martin,* 7 N. Y. 210. See, also, *Harrell v. Hill,* 68 Am. Dec. 206. The want of harmony in the cases may arise from the want of discrimination in the facts of each particular case to which the rule stated is sought to be applied. Manifestly, each case must depend upon the wording of the contract or deed when read in the light of the facts and circumstances under which it was made.

An able judge, after an analysis of several adjudged cases, classified them thus: " Sales in gross may be subdivided into various subordinate classifications: (1) Sales strictly and essentially by the tract, without reference in the negotiation or in the consideration to any estimated or designated quantity of acres; (2) sales of the like kind in which, though a supposed quantity by estimation is mentioned or referred to in the contract, the reference was made only for the purpose of description, and under such circumstances or in such a manner as to show that the parties intended to risk the contingency of quantity, whatever it might be, or how much soever it might exceed or fall short of that which was mentioned in the contract; (3) sales in which it is evident,

from extraneous circumstances of locality, value, price, time, and the conduct and conversations of the parties, that they did not contemplate or intend to risk more than the usual rates of excess or deficit in similar cases, or than such as might be reasonably calculated on as within the range of ordinary contingency; (4) sales which, though technically deemed and denominated 'sales in gross,' are in fact sales by the acre, and so understood by the parties. Contracts belonging to either of the first two mentioned classes, whether executed or executory, *should not* be modified by the chancellor when there has been no fraud." *Harrison v. Talbot*, 2 Dana, 266. Such classification is expressly sanctioned in *O'Connell v. Duke*, 29 Tex. 312. We are constrained to believe that the case at bar comes within the second class mentioned. In *Noble v. Googins*, 99 Mass. 234, 235, Mr. Justice GRAY observed: "The American courts have shown more unwillingness than the English to encourage litigation about the amount of the price, by reason of a variation in the quantity of land agreed to be conveyed, without clear evidence that the quantity was made an essential element of the bargain. . . . . It has been declared by a great weight of authority, in accordance, as we think, with the soundest reason, that in an agreement for the sale and purchase of land for an entire sum, either a description of the land by its boundaries, *or* the insertion of the words 'more or less' *or* equivalent words, will control a statement of the quantity of land or of the length of one of the boundary lines, so that neither party will be entitled to relief on account of a deficiency or surplus, unless in case of so great a difference as will naturally raise the presumption of fraud or gross mistake in the very essence of the contract." In a later case in the same state, it is said: "The question, in cases of this description, has usually been whether the sale was by *estimation* or by measurement. If the *former*, and the sale was fair, there is no hardship in applying the rule

that the buyer takes the risk." *Tarbell v. Bowman*, 103 Mass. 344; *Dickinson v. Lee*, 106 Mass. 557.

Upon the strength of these authorities, as well as reason, we must hold that the plaintiffs are not entitled to any abatement from the purchase price named in the contract.

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded for further proceedings according to law.

The respondents moved for a rehearing on the ground "that this court, in its opinion, has failed to make a fina disposition of the case and to direct the circuit court to enter such a decree as these respondents are entitled to."

The following opinion was filed March 18, 1890:

BY THE COURT.— Upon considering the arguments on the motion for a rehearing in this case, the mandate of this court is modified so as to read as follows: The judgment of the circuit court is reversed, and the cause is remanded with direction to dismiss the complaint unless the trial court, upon notice and application, in its discretion, and upon such reasonable terms as may be just and equitable, grants leave to the plaintiffs to so amend their complaint as to ask and enforce specific performance of the contract as construed by this court on this appeal.