## Dorothea Rotermund, Appellee, v. Emma C. Lauritzen et al., Appellants.

### Gen. No. 7,022.

1. VENDOR AND PURCHASER—*specific description of boundaries as controlling general statement of acreage.* As a general rule, where a tract of land is sold for a sum in gross, by its proper numbers, as indicated by the government survey, or by any other specific description by which its exact boundaries are or may be determined, the boundaries to be thus ascertained, in case of discrepancy, will control the description as to the quantity or number of acres, and in such cases neither the purchaser nor the vendor will have the remedy against the other for any excess or deficiency in the quantity stated, unless such excess or deficiency is so great as to raise a presumption of fraud.

Rotermund v. Lauritzen, 225 Ill. App. 170.

2. VENDOR AND PURCHASER—*effect of statement of acreage where property sold by metes and bounds.* Neither party to a sale of an entire tract of land by metes and bounds, for a gross sum, will be bound by a statement as to the quantity or number of acres contained in the tract, when both parties act in good faith and there has been no fraudulent misrepresentation of any kind, unless the statement made is expressly, or by necessary implication, made the essence of the contract.

3. VENDOR AND PURCHASER—*mistake in statement of acreage warranting equitable relief.* Equity will not grant relief where there are discrepancies in acreage in a contract for the sale of land, made simply through mistake, unaccompanied by fraud, as there must be gross mistake or fraud to warrant the granting of relief.

4. VENDOR AND PURCHASER—*misstatement of acreage insufficient to warrant equitable relief to purchaser.* Evidence that a vendor referred to the quantity of land sold as 133 acres in the preliminary negotiations, that the vendor's agent stated that he did not know the exact acreage, but that it was in the neighborhood of 133 acres, there being no definite testimony by the attorney who drew all the papers as to the acreage, is insufficient to entitle the purchaser to relief on the grounds of mistake or fraud, when the contract of sale and ·deed refers to the sale of the vendor's land by specific description, and then states that there are 133 acres "more or less," although it afterwards appears that there is a shortage of 6.212 acres.

5. VENDOR AND PURCHASER—*denial of equitable relief for shortage in acreage sold in gross and described as "more or less."* Where a contract for the sale of land and a deed particularly describe the property, and then state that the land contains 133 acres, "more or˙ less," and such contract and deed were prepared by the purchaser's attorney, the land being sold in gross, and there being no provision for any shortage, it will be presumed that the contract contained all the terms of the parties, and the purchaser will not be entitled to any relief even though there is a mistake as to the acreage, and the three irregular pieces of land ˙sold in fact only contains 126.788 acres.

6. VENDOR AND PURCHASER—*statement of vendor as to acreage as mere opinion.* A vendor's statement that a farm contained 133 acres must be considered as a mere expression of opinion, when it appears that the farm consisted of three irregular pieces, and it was necessary to have a survey to ascertain the proper description of the premises. .

Appeal from the Circuit Court of Will county; the Hon. ARTHUR W. DE SELM, Judge, presiding. Heard in this court at the October term, 1921. Affirmed. Opinion filed April 27, 1922.

D. R. Anderson and Charles H. Blim, for appellants.

Frank L. Jones, for appellee.

Mr. Justice Partlow delivered the opinion of the court.

Appellee, Dorothea Rotermund, as sole beneficiary under the will of Henry Rotermund, deceased, filed her bill in the circuit court of Will county against the appellants, who were the widow, children and devisees of Paul P. Lauritzen, deceased, to foreclose a trust deed from Paul P. Lauritzen to Henry Rotermund upon certain real estate in Will county. An answer was filed to the bill, together with a cross-bill, and upon a hearing the cross-bill was dismissed and a decree of foreclosure rendered upon the original bill. From that decree this appeal was prosecuted.

The only question in this case is whether the words, "more or less" in the contract of December 2, 1916, between Henry Rotermund and Paul P. Lauritzen covered a shortage of 6.212 acres in the farm lands conveyed by Rotermund to Lauritzen. The evidence shows that on November 4, 1916, Henry Rotermund and wife made a contract to convey the farm land in question in Washington township, Will county, to Paul P. Lauritzen, taking in exchange a flat building and several cottages in Chicago Heights. There was to be a difference of $6,000 paid by notes of Lauritzen to Rotermund. The contract provided for an abstract of title to be furnished by each of the parties. When the abstract to the farm was examined, it was found that there were some defects in the title. On December 2, 1916, a new contract was executed, by the terms of which Lauritzen executed a deed to the Chicago Heights property to Rotermund, and Rotermund executed a deed to Lauritzen for the farm. Both the contract and the deed, after particularly describing the farm, contained

these words: ''These three parcels of land containing 133 acres, more or less.'' Eight promissory notes were executed by Lauritzen for the $6,000 difference, which notes were secured by a trust deed on the farm, which trust deed is here being foreclosed. Note No. 7 was for $1,000, and it is this note which is unpaid.

The contract of December 2, 1916, also provided that Rotermund should file a bill to quiet the title to the farm and should make a survey of the premises in order that a better description might be secured; that $1,000 should be retained by Lauritzen out of which he was to pay the expenses of the suit to quiet the title and pay for the survey. Rotermund, on request of Lauritzen, after the survey had been completed, was to execute a new deed to the premises by the description made by the surveyor in his report.

After title had been perfected, the survey made and a second deed given, Lauritzen was to pay the remainder of the $1,000 to Rotermund. The contract of December 2, 1916, the two deeds, the trust deed, and the notes secured thereby, were all executed at the same time as a part of one and the same transaction. Appellee claims that Note No. 7 was delivered to Rotermund along with the other notes and was then returned by Rotermund to Lauritzen to represent the $1,000 security, which Lauritzen was to have until after the survey had been made and the title quieted. Appellants claim that Lauritzen never delivered this note to Rotermund, but retained it as his security. The survey was made February 4, 1919. Lauritzen continued to pay interest on all the notes until the survey was made. When the survey was completed it was found that the farm contained only 126.788 acres, being 6.212 acres short of the 133 acres specified in the deed and contract.

Paul P. Lauritzen died on July 12, 1919, leaving the appellants as his legatees and devisees, and Henry Rotermund died May 19, 1917, devising all of his property to his widow, the appellee. Mrs. Lauritzen re-

fused to pay any more interest on Note No. 7, or pay any portion of the principal, claiming that the money already paid was more than was due, on account of the shortage in the acreage, and that the Rotermund estate owed her money on that account, being for 6.212 acres at $150 per acre, together with $90 interest paid on Note No. 7, which made a total, including interest, of $1,045.48, which she claimed as a set-off in her cross-bill, in payment of the balance on the note set out in the bill to foreclose. She prayed that the trust deed be set aside as a cloud upon the title of the appellants, that appellee be ordered to return to appellants $45.48, and that the trust deed be declared to be fully satisfied.

It is contended by the appellants that on account of the use of the words, "containing 133 acres, more or less," in the deed and contract, if the difference between the real and represented quantity of land in the farm was so great as to indicate a mistake or fraud, it will not be covered by the words "more or less" which apply only to a reasonable excess or deficit; that a court of equity will grant relief even where the discrepancy is caused by mistake alone, unaccompanied by fraud or deception; that even if the sale be in gross, the vendor must account to the vendee for any deficiency; that the words "more or less" are used only for the purpose of guarding against voiding the contract in case of accident and trifling variance from the specific acreage. In support of this contention, many authorities are cited by appellants. No good purpose would be served by a review of these authorities in detail. They announce rules of law applicable to facts entirely different from those here presented. We think the Supreme Court in *Wadhams v. Swan*, 109 Ill. 46, on page 56, has announced the rule of law applicable to the facts here presented, as follows: "The general rule unquestionably is, that where a tract of land is sold for a sum in gross, by its proper numbers, as indicated by the government survey, or by

any other specific description by which its exact bound-aries are or may be determined, the boundaries to be thus ascertained, in case of a discrepancy, will control the description as to the quantity or number of acres, and in such case neither the purchaser nor the vendor will have a remedy against the other for any excess or deficiency in the quantity stated, unless such excess or deficiency is so great as to raise a presumption of fraud. (*Jackson v. Moore*, 6 Cow. 717; *Noble v. Googins*, 99 Mass. 231.) It may be stated as a limita-tion on the above proposition, that assuming the par-ties to be acting in good faith, and that there has been no fraudulent misrepresentation of any kind, upon a sale of an entire tract of land by metes and bounds, for a gross sum, neither party will be bound by a state-ment as to the quantity or number of acres contained in the tract, except where such statement is expressly, or by necessary implication, made the essence of the contract. Of course, where the seller warrants the tract, either expressly or by necessary implication, to contain a certain number of acres, or, which amounts to the same thing, where the sale is by the acre, and the seller makes a misrepresentation as to the number, the latter will, as in any other case of a breach of con-tract, be liable, and in an action by him for the pur-chase money the amount of the deficit at the contract price may be recouped. *Waterman v. Clark*, 76 Ill. 428." To the same effect are *Morgan v. Smith*, 11 Ill. 194; *Travis v. Taylor* (Ky.), 118 S. W. 988; *White v. Price*, 202 Pa. St. 128; *Docter v. Furch*, 76 Wis. 153, 44 N. W. 648; *Tyler v. Anderson*, 106 Ind. 185; *Norwood v. Washington*, 136 Ala. 657.

The allegations of the amended answer to the orig-inal bill, and the allegations of the cross-bill filed by appellants, were that the representations of Roter-mund, as to the acreage, were falsely and fraudulently made. There is no evidence to sustain such an allega-tion under either the answer or the cross-bill, and this

contention was apparently abandoned by appellants on this appeal. As we understand the claim of appellants, it is that where there are discrepancies in acreage made simply through mistake, unaccompanied by fraud, that equity will grant relief. This is not the law. A mere mistake is not sufficient. In order for equity to grant relief there must be a gross mistake or fraud. 39 Cyc. p. 1585. As a matter of fact there is very little, if any, evidence in this case tending to show any mistake as to the acreage. Both of the parties to the contract and deeds are dead, and the evidence was from those who were present while the negotiations were in progress and at the time the contracts were signed. Charles Sage, the real estate agent who represented Lauritzen, testified that Rotermund never mentioned the question of acreage to him, but that Mr. Rohe, Rotermund's agent, did mention it on at least one occasion in the initial stages of the negotiations. Mrs. Lauritzen testified to two conversations with Rotermund, one on the farm and the other on the premises in Chicago Heights. Both of these conversations were before November 4 and before the contract was entered into. In these conversations she testified that Rotermund said that the farm contained 133 acres and that it was worth $150 per acre. Rohe testified that, in some of the preliminary negotiations, the number of acres was referred to as 133, but that this statement was made by him in the presence of Rotermund; that Rotermund stated that he did not know the exact number of acres; that it was in the neighborhood of 133 acres, but that there was some dispute in regard to it; that he thought there were 133 acres or more, and that he based his estimate on the machine measure of his seeder. Homer Abbott, who was the attorney for Lauritzen, made all of the papers but he did not testify definitely on the question of acreage. He was unable to say whether he got his nformation as to the acreage from the old deeds, or

from the conversation of the parties. This is practically all of the evidence upon which any charge of fraud or gross mistake can be made, and it falls far short of entitling the appellants to any relief, either upon the grounds of fraud or on the grounds of mistake.

Even if the evidence did show a mistake as to the acreage, it would not be sufficient to entitle appellants to the relief sought, for the reason that, in the trade, the farm was sold in gross and was not sold by the acre. The negotiations covered several weeks and the properties were inspected upon several occasions. The farm was in three pieces. It was a part of a fractional section, irregular in shape and bounded on the east by the Indiana State line, which was also irregular. In fact the boundary of these three tracts was so irregular that the purpose of having a survey was to ascertain the proper description of the premises. Any statement as to the number of acres in each piece, under the circumstances appearing from the evidence, would be the merest expression of an opinion and must of necessity be considered as such. After considerable negotiation it was finally agreed that the farm should be put in at $18,500 and the city property at $12,500, the difference of $6,000 to be paid by notes. Appellants contend that the farm was valued at $150 per acre, which would amount to $19,950 or $1,400 more than the price finally agreed upon. Even if the contention of appellants could be sustained, they would not be entitled to a credit at the rate of $150 per acre, because the farm did not come to that amount on the acreage mentioned in the deed. The contract of December 2, 1916, was prepared by the attorney for Lauritzen. If the land had been sold by the acre, it is reasonable to suppose that the contract would have been drawn so as to cover any shortage in acreage if that had been the intention of the parties. There is no provision in the contract for any shortage and it

will be presumed that the contract contained all the terms between the parties. There is no claim of fraud. or mistake in the contract, and the terms must govern and the parties be controlled thereby.

Mrs. Lauritzen testified that when they examined the farm, Rotermund stated that the three tracts contained 73, 20 and 40 acres respectively. The survey shows that two of these tracts overrun the estimate made by Rotermund and one of them was short over 6 acres. If appellants are entitled to a deduction because of a shortage, then it would naturally follow that appellees would be entitled to an allowance in case the land overran the estimate. If the case should be turned around and this was a suit by Rotermund to recover for more land than was described in the deed, such a suit would necessarily fail for want of evidence to sustain it, and for the same reason the claim of appellants to recover for a deficiency must also fail. Just where this shortage is does not clearly appear from the evidence. There is some mention in the evidence of a road about the farm, but whether the survey included this road or was only for the land within the fences does not clearly appear. If the survey included only the land within the fences and if there were any roads around the land, such roads would belong to the owner of the fee and would be conveyed by the deed. The shortage might be explained in this way and, if it was, there could be no allowance on account of shortage.

The decree was correct and will be affirmed.

*Decree affirmed.*