Taylor vs. Matteson.

TAYLOR, Respondent, vs. MATTESON, Appellant.

*September 11 — October 17, 1893.*

<div style="float:right">86　113<br>88　646</div>

(1) Res adjudicata: *Judgment on demurrer.* (2–5) *Corporations: Agreement by stockholders to indemnify indorser of notes: Unauthorized acts by indorser as president: Ratification: Accounting: Counterclaim: Parties.*

1. A judgment, upon demurrer, dismissing a complaint on the ground that it was insufficient by reason of the omission of an essential allegation, is not a bar to another action, the complaint in which contains such allegation.

2. Stockholders in a corporation having by a written contract severally agreed to indemnify such stockholders as were or should become liable upon the paper of the company as indorsers, each to contribute in proportion to the stock held by him, it is immaterial, in an action upon such contract against one who executed it unconditionally, that other parties signed it upon condition that it should be binding on them only if signed by all who were named therein.

3. The fact that the plaintiff in such action had received an increase in his salary as president of the company, as a consideration for indorsing paper of the company, does not preclude him from resorting to the contract of indemnity.

4. The fact that plaintiff as president issued, and personally indorsed, notes of the company beyond the limit fixed in the contract of indemnity, without authority from the corporation, and that the

VOL. 86 — 8

assets of the corporation were by its authority applied to the payment of the notes issued in excess of said limit instead of the notes within the terms of the contract of indemnity, at a time when the corporation was in fact insolvent, is not a defense to an action on the contract, since the corporation, whether solvent or not, had the power to ratify and to pay the notes so given by plaintiff, and defendant, not being a creditor of the corporation, could not be heard to question its action in that behalf.

5. In an action at law upon the contract of indemnity defendant could not set up a counterclaim for an accounting by plaintiff as to unauthorized or improper acts done by him as president of the corporation, because the right of action in respect thereto, if any, is in the corporation, and it is a necessary party to the litigation thereof, but is not a necessary party to the litigation of plaintiff's demand.

APPEAL from the Circuit Court for *Jackson* County.

This is an appeal from a judgment against the defendant upon the agreement set out in the case of *Taylor v. Coon,* 79 Wis. 78, 79, in which case the complaint was held "fatally defective, in that it did not aver that the plaintiff had paid the obligations upon which he was indorser, or had suffered any loss or damage by reason of his indorsements." 79 Wis. 86. A former action had also been brought by the plaintiff against the defendant, the complaint in which was defective for the reason above mentioned, but the defendant had answered it, setting forth various defenses and counterclaims, to certain of which counterclaims the plaintiff demurred for want of sufficient statements of fact to constitute counterclaims, etc., and for other reasons. After the decision of this court in *Taylor v. Coon, supra,* the circuit court "sustained the demurrer as a demurrer to the complaint," and adjudged it "to be insufficient, as not stating facts sufficient to constitute a cause of action," and final judgment was given in favor of the defendant on said demurrer, reciting, among other things, that the court "adjudged that the said demurrer reached back to the complaint, . . . that the complaint

fails to state facts sufficient to constitute a cause of action, and that the defendant is entitled to judgment sustaining said demurrer as a demurrer to said complaint," etc.; and judgment of dismissal of the complaint followed.

The complaint in this action was the same as that in the former case, with the allegation added that the plaintiff had paid the notes of the Hudson Lumber Company in full, so indorsed by him and mentioned in the complaint, amounting to $19,000, for want of which allegation his former complaint had been dismissed.

The defendant set up various defenses and counterclaims, the matters relied on being:

*First.* That the judgment in the previous action was a bar to the present complaint.

*Second.* That the plaintiff presented the paper in question, which it had been agreed was to be signed by all the stockholders of the Hudson Lumber Company, to him for signature, requesting him to sign it; that the plaintiff represented to the defendant that all of said stockholders were going to sign it, and the defendant said that he would not, unless it was so signed; that it was understood that, unless all of said stockholders signed it, it would not be binding upon any of them or this defendant, and the plaintiff promised him that, if he signed it, it should not be of any force or effect until signed by each of said stockholders; that, relying upon these assurances and statements, he signed the same; that D. C. Hill, D. C. Davis & Sons, and George R. Jones, who were stockholders in all to the amount of eighty-five shares, and were men of means and financially responsible, were not requested to, and did not, sign the same.

*Third.* That the plaintiff, since more than a year prior to the execution of said agreement, had been president, one of the directors, and general manager of all the business and affairs of the company, and that he had been guilty of

Taylor vs. Matteson.

disregard of the duties of his trust, and through his neglect, inattention thereto, and gross mismanagement on his part, the capital stock of the company, which was fully paid in, had been dissipated, lost, and wasted, except that he had applied funds and property of said company in payment of debts of said company contracted by him, and for which he had become liable, but not covered by the agreement set forth in the complaint, leaving unpaid the notes mentioned in said complaint; that it was his duty to have applied said funds to the payment of the notes upon which the plaintiff became liable as indorser, and claimed to have been within the terms of the agreement on which the action was founded; that the funds of the said corporation had been used by the plaintiff in paying off debts and liabilities incurred by him without its knowledge or consent or that of the board of directors, so that the burden of paying the notes mentioned in the complaint was wrongfully and unjustly attempted to be cast upon the defendant and other stockholders who signed said agreement.

*Fourth.* By way of counterclaim, that as such president the plaintiff took exclusive control and management of the business, affairs, property, and funds of the company, and ignored its board of directors, and assumed the powers and functions of said board, and made contracts and improperly incurred debts to the amount of $50,000, without any authority from the company, and charged that the plaintiff had converted to his own use, as such, property of the company to the value of $30,000; that he had made false and misleading reports and statements to the stockholders, to their great detriment, and that in 1883, though said company was insolvent to the knowledge of the plaintiff, he concealed that fact from the other stockholders, and declared and paid a dividend of five per cent. on the stock, without the authority of the board of directors; and prayed, among other things, that the plaintiff be declared and com-

pelled to render an account of all his doings and transactions, and to apply said money and property to pay off the notes mentioned in the complaint, and to make good the losses of the company sustained as aforesaid.

*Fifth.* By way of counterclaim, that the plaintiff is the holder of $10,000 stock in the Hudson Sawmill Company of Hudson, Wis., which became a purchaser of the real estate of the Hudson Lumber Company; that said stock was paid for by plaintiff out of the property of said lumber company, without defendant's knowledge or consent, while the plaintiff was such president, director and general manager, and that said stock ought to be adjudged to be held by him in trust to be sold to apply in payment of the notes mentioned in the complaint; that the plaintiff lives in Washington, D. C., and defendant has repeatedly and in good faith demanded the board of directors of the Hudson Lumber Company to bring an action in the name of the said company against the plaintiff for an accounting in respect to all the matters aforesaid, and to recover from the plaintiff the loss and damage sustained by him by reason of such alleged negligence, misconduct, and breach of trust, and to recover from him the value or the proceeds of the property so converted to his own use, as well as the value of said stock so obtained and received, or so much thereof as might be necessary, to be applied in payment of the notes mentioned in the complaint, but this the board of directors refused to do; that the said stockholders are under the control and direction of the plaintiff, and decline and refuse to act; that the Hudson Lumber Company is an insolvent corporation, and primarily liable on said obligations; that it is necessary for the protection of defendant to have the benefit of the claims existing in favor of the corporation against said *Taylor;* that the Hudson Lumber Company is a necessary party to the action, without whose presence a complete determination of the controversy cannot be had; and that

the defendant is the owner of fifteen shares of the stock of the corporation, and the total number of shares is 500, of the par value of $100 each.

It was also contended that, as the plaintiff accepted an increase of salary of $600 per annum as a consideration for indorsing the paper of the Hudson Lumber Company, he had no right of recourse against the company nor upon the obligation on which the action is brought.

Application was made to the court for an order to bring in the Hudson Lumber Company as a party defendant, but the court denied it, and the defendant appealed from the order.

It appeared that the plaintiff ceased to do business as president and manager of the company in October, 1889, and it was then resolved by the stockholders that the company close its operations, sell out and convey its property, and apply the proceeds, or so much as might be necessary, to the payment of the company's indebtedness, and appointed Amos E. Jefferson as its agent to represent the company in negotiating the sale of its property, real, personal, and mixed, upon such terms as to price, etc., as he should, in his discretion, deem for the best interests of the company, and he was authorized and requested to apply the proceeds to the payment of the indebtedness of the company. This appears to have been adopted immediately after the plaintiff presented a statement of the resources and liabilities of the company and of its business of the then past year.

The court found that the defendant, for a good and valuable consideration, made and delivered the instrument in writing mentioned and set forth in the complaint, without any condition being attached to such delivery; that the plaintiff, in reliance on said written instrument, indorsed notes and paper of the Hudson Lumber Company mentioned, to a large amount, and on the 5th of February,

Taylor vs. Matteson.

1890, he was liable as such indorser for its benefit for the full sum of $19,000; that he was called upon to pay, and did pay, that sum on such paper out of his own personal funds; that he then had no money or funds in his hands or under his control belonging to the said company with which he could have paid said sum or any part thereof, and the Hudson Lumber Company was then insolvent and had no money, property, or funds with which to pay said sum; that the $19,000 was borrowed by the plaintiff for said Hudson Lumber Company without any vote, either by its directors or stockholders, but that said directors and stockholders had acquiesced in and ratified such action on the part of the plaintiff; that D. C. Hill, D. C. Davis & Sons, and G. R. Jones, owners of shares of stock in said Hudson Lumber Company, did not sign, nor were they requested to sign, the agreement; that the plaintiff was president and general manager of its business affairs, as claimed; that the plaintiff did not release the defendant from the obligation incurred by signing and delivering the instrument set forth in the complaint; that the defendant was the owner of fifteen shares of stock of the 500 shares of the company, and his proportional liability for said $19,000 was $507, with interest from February 5, 1890, amounting to $687, for which sum judgment was given.

Such other facts as are material appear in the opinion.

For the appellant there was a brief by *Bashford & Disney*, attorneys, and *H. H. Hayden*, of counsel, and a separate brief by *R. M. Bashford*, of counsel, and oral argument by *J. W. Bashford* and *R. M. Bashford*. To the point that the former judgment is a bar to this action, they cited *Bissell v. Spring Valley*, 124 U. S. 225; *Alley v. Nott*, 111 U. S. 472; *Lamb v. McConkey*, 76 Iowa, 47; *Clemins v. Clemins*, 37 N. Y. 74; *Cutler v. Wright*, 22 id. 474; *Carlin v. Brackett*, 38 Minn. 307; 1 Herman, Estoppel, secs. 122, 123, 125; 21 Am. & Eng. Ency. of Law, 216; *Oregonian R.*

*Co. v. Oregon R. & N. Co.* 27 Fed. Rep. 283; *Outram v. Morewood,* 3 East, 358; *Greatherd v. Bromley,* 7 T. R. 455; *Henderson v. Henderson,* 3 Hare, 115; *Stafford v. Clark,* 2 Bing. 382; *Miller v. Covert,* 1 Wend. 487; *Bagot v. Williams,* 3 Barn. & C. 241; *Roberts v. Heim,* 27 Ala. 678; *Ellis v. N. P. R. Co.* 80 Wis. 459; *Edgar v. Buck,* 65 Mich. 356; *Bouchaud v. Dias,* 3 Denio, 244; *Perkins v. Moore,* 16 Ala. 17; *Robinson v. Howard,* 5 Cal. 428; *Aurora City v. West,* 7 Wall. 99; *Beloit v. Morgan,* id. 619; *Goodrich v. Chicago,* 5 id. 573; *Thompson v. Myrick,*. 24 Minn. 11; *Harris v. Harris,* 36. Barb. 88, 94; *Embury v. Conner,* 3 N. Y. 522; *Richards v. Allis,* 82 Wis. 509; *Wilson v. Ray,* 24 Ind. 156; *Nispel v. Laparle,* 74 Ill. 306; *Ruegger v. I. & St. L. R. Co.* 103 id. 449; *Vanlandingham v. Ryan,* 17 id. 25; *Collins v. Bennett,* 46 N. Y. 490; *Jacobson v. Miller,* 41 Mich. 90, 99; *Lampen v. Kedgewin,* 1 Mod. 207; *Smith v. Hornsby,* 70 Ga. 552; Van Vleet, Collateral Attack, 29. By accepting an increase of salary on account of his being responsible for the money borrowed, plaintiff rendered himself personally liable for the entire amount, and thereby released this defendant. *More v. Howland,* 4 Denio, 264; *Elwell v. Chamberlin,* 31 N. Y. 611; Tyler, Usury, 95; Brandt, Suretyship, 235, 236; *Oakley v. Boorman,* 21 Wend. 588; *Ketchum v. Barber,* 4 Hill, 224, 235; *Cooper v. Page,* 24 Me. 75; *Silvey v. Dowell,* 53 Ill. 260.

*Ray S. Reid,* for the respondent.

PINNEY, J.  1. It has long been settled, as declared by DE GREY, C. J., in the *Duchess of Kingston's Case,* that " the judgment of a court of concurrent jurisdiction directly upon the point is, as a plea, a bar, or as evidence, conclusive between the same parties upon the same matter directly in question in another court." 2 Smith, Lead. Cas. pt. 2, p. 735. Identity of the subject matter is indispensable in order that the decision in the first action shall be effective as an estop-

pel in the second. But a considerable difference has been expressed upon the extent of the estoppel, some cases holding that it extends only to the point actually decided, and that, where the record is indefinite in that respect, parol evidence is competent to make it plain. Other cases, and perhaps a decided preponderance of modern authority, are to the effect that the estoppel of the first suit is coextensive with the issue in it, and extends to whatever might, with proper diligence, have been brought forward and litigated under the pleadings in it. In this case, however, there is no uncertainty as to the point decided in the first action. The record on the subject is explicit, and excludes all presumption that might otherwise be held to exist that any other matter than the insufficiency of the complaint in that action was adjudged in it. It is plain that there is no legal identity between the alleged cause of action relied on in the first complaint and the one set out in the second. The judgment in the former case goes expressly on the ground that the complaint in it did not state facts sufficient to constitute a cause of action, and upon that ground and consideration only, and this is necessarily the extent of the estoppel, namely, that the facts stated in the complaint did not entitle the plaintiff to recover. But in the second action there is a new complaint, stating, in addition to the facts included in the former one, such other facts as are necessary to constitute a perfect cause of action. The diversity between the cases is apparent. The first complaint did not state a cause of action, but the second one does. Under the first complaint, evidence could not be received to establish a right of recovery, because, as this court had held in *Taylor v. Coon*, 79 Wis. 76, it was fatally defective; while under the second complaint the rights of the plaintiff may be fully established and adjudged, it being alleged therein that the plaintiff had paid the notes indorsed by him. The case, therefore, now before the court is a new

one, upon which judgment has never been given, and it is in no proper or legal sense identical with the matter alleged in the other. The judgment did not, and could not, therefore, from the nature of things, determine that he had no case and should not have judgment in a subsequent action wherein he alleged such payment, and on grounds not disclosed in the first.

But the precise question has been decided in *Docter v. Furch*, 76 Wis. 153, where a judgment that the plaintiff's complaint did not state facts sufficient to constitute a cause of action, by reason of the omission of certain essential allegations, was held not to be a bar to another action by the same plaintiff in the complaint in which the defects in the former one are supplied, and that case is decisive against the bar invoked by the defendant in this. In 1 Freeman, Judgments (sec. 267), it is said that "if the court decides that the plaintiff has not stated facts sufficient to constitute a cause of action, or that his complaint is otherwise liable to any objection alleged against it, such decision does not extend to any issue not before the court on the hearing of the demurrer. It leaves the plaintiff to present his complaint in *another* action, so corrected as to be no longer vulnerable to the attack made in the former suit." And many cases are cited in a note in support of this conclusion.

In *Gilman v. Rives*, 10 Pet. 298, 301, it was held (STORY, J., delivering the opinion) "that a judgment that a declaration is bad in substance can never be pleaded as a bar to a good declaration for the same cause of action. The judgment is in no just sense a judgment on the merits." The cases of *Walden v. Bodley*, 14 Pet. 156; *Hughes v. U. S.* 4 Wall. 237; *Gould v. E. & C. R. Co.* 91 U. S. 526; and *Wiggins Ferry Co. v. O. & M. R. Co.* 142 U. S. 410,— are all to the same effect; and the same view is maintained in *Birch v. Funk*, 2 Met. (Ky.), 544; *Stowell v. Chamberlain*, 60 N. Y. 272; *Brackett v. Hoitt*, 20 N. H. 257; *Schindel v. Suman*, 13 Md.

310; *Smalley v. Edey*, 19 Ill. 207; *Kittredge v. Holt*, 58 N. H. 191. It is well settled that the estoppel of an adjudication made on grounds of a purely technical character, *and where the merits could not come in question*, is limited to the point actually decided, and will not preclude a subsequent action brought in a way to avoid the objection which proved fatal in the first. *Hughes v. Blake*, 1 Mason, 519; *Greely v. Smith*, 1 Woodb. & M. 181; *Carmony v. Hoober*, 5 Pa. St. 305; *Wilbur v. Gilmore*, 21 Pick. 253; *Vanlandingham v. Ryan*, 17 Ill. 26; *Harding v. Hale*, 2 Gray, 399. It is clear, therefore, both upon principle and authority, that the judgment in the first action was not a bar to the complaint in the second; and, as the judgment in the first action was given and rested solely on the insufficiency of the complaint, it did not establish judicially the truth of either of the counterclaims demurred to. Whether the defendant might have proceeded on them it is not material to consider, as he chose to take a judgment dismissing the action without obtaining any adjudication as to their merits.

2. In the case of *Taylor v. Coon*, 79 Wis. 76, we had occasion to construe and consider the legal effect of the writing upon which this action is founded, and it was held, in substance, that an action such as this was a legal action upon a contract of indemnity; that as it was a contract between the stockholders of the company, by which each signer " agrees with all the others, and each with such stockholders " as then were or should become liable upon the company's paper as indorsers or otherwise, " that *each* of said parties will so indemnify, protect, and save harmless such stockholders " so liable or becoming liable on such paper, " in proportion of each of said stockholders' ownership of said stock, and to that end will, upon the demand of any one or more of said stockholders who shall be called upon as indorsers to pay such paper, contribute in proportion to the stock held by him," the contract of indemnity

Taylor vs. Matteson.

was therefore to be construed as several, as respects each of the parties signing it, and that any one of them who has a valid claim thereon against the others may maintain a separate action upon it, against any one so liable for his proper proportion thereof, without joining the others as defendants; that a delivery of such contract to indemnify against loss or damage by reason of liability as indorser, by one who has signed it, to another of the signers, was a consent that it should be binding on him, although not signed by all who are named in the body of the instrument as parties. The testimony of the defendant shows that he executed and delivered the agreement in question to the plaintiff unconditionally, and irrespective of whether it should or should not be signed by all the parties named in it. Of the eighteen persons who executed it, the defendant appears to have been the last signing it. He describes what occurred at the time as follows: "I went into Spooner's office, and *Taylor* said, 'There is that bond. We want you to sign it.' I looked it over casually, and signed it. Spooner turned to his stenographer, and said, 'Insert *Matteson's* name in the bond;' and he inserted it, and I signed it and got up and walked out." He makes no claim in his testimony that he made or stated any condition about signing and delivering the instrument. It is wholly immaterial what either of the other signers may have said or insisted on when they signed what was, as to each of them, as well as the defendant, a separate contract, as much so as if there had been as many separate papers as there were signers of the paper in question.

3. The fact that the plaintiff received an increase of salary of $600 per annum for indorsing the paper of the company does not prevent him from having recourse upon the company as the maker of the paper, or from resorting to the agreement of indemnity in question. The $600 was paid him for assuming the risk of indorsing the paper, and

Taylor vs. Matteson.

not as a consideration for foregoing his rights and remedies as an indorser in that behalf. This seems to be too plain for argument.

4. It is not denied·that the notes indorsed by the plaintiff, and paid by him, were within the terms of the defendant's contract of indemnity; but it is claimed that the plaintiff, as president of the corporation, issued and personally indorsed notes to an amount exceeding the $25,000 limit fixed in the agreement, without any authority of the corporation, and that the property and assets of the corporation were by its authority improperly applied to the payment of the notes issued in excess of the $25,000, and used for its benefit, at a time when the corporation was in fact insolvent, and that its property and assets should have been applied to the payment of the notes which were within the terms of the agreement of indemnity; that the plaintiff had sufficient of the property and means of the corporation in his hands to have paid off these notes, and should have made such application of it, but that he wrongfully converted and disposed thereof to his own use. Whatever he had in his hands as president or general manager he held subject to the control of the corporation, and for any abuse of his authority or trust he is liable only to the corporation. The corporation had the power, and it was doubtless right for it, to ratify and affirm any notes given in its business and for its benefit and in its name by the plaintiff, but without authority, and to direct the application of its property and means to their payment, so far as the defendant was concerned; and the defendant occupied no position which would give him a right to complain, even though the corporation was insolvent at the time, for it does not appear that he was or is a creditor of the corporation, and certainly as stockholder he could not be heard to question such ratification and application of corporate assets.

These considerations dispose, it is believed, of the vari-

ous defenses urged to the plaintiff's claim. It is not nec-
essary, in this action, to determine what are the rights of
the various parties interested in the questions suggested, or
in the various other matters set up by way of counterclaim,
for we are of the opinion that they do not constitute proper
counterclaims in favor of the defendant and against the
plaintiff, and are not properly pleadable as such in this ac-
tion. The counterclaims relied on assert various matters,
in respect to which the rights of action, if any, are plainly
in the corporation, the Hudson Lumber Company, and not
in the defendant, and he is not otherwise interested therein
except as a stockholder. He prays relief of various kinds
on account of them, and that the corporation be made a
party defendant, in order that these matters may be liti-
gated, and he asserts that the corporation is wholly under
the plaintiff's control and refuses to sue in respect thereof.
This action is one strictly of a legal character on an obliga-
tion to which the corporation is not a party, and the claims
thus attempted to be asserted in favor of the corporation
are available neither as payment nor in setoff of the plaint-
iff's demand. The right of action in respect to them, if
any, being in the corporation, a recovery, if any should be
had, would belong to it and go into its treasury or to its
assignee or receiver, if any, to be administered as its other
corporate assets, whether recovered by the corporation itself
or in an action prosecuted by the plaintiff as a stockholder,
to which the corporation would be a necessary party. The
defendant could not use the recovery in an action prose-
cuted by him as stockholder in payment or extinguishment
of the plaintiff's demands against him. Cook, Stock, §§ 734–
738; *Porter v. Sabin*, 149 U. S. 478; *Davenport v. Dows*,
18 Wall. 628; *Hawes v. Oakland*, 104 U. S. 450. The im-
practicability and unreasonableness of attempting to adjust
the claims of the Hudson Lumber Company against the
plaintiff, or to wind up its affairs and take an account of

its assets and administer the same, in this purely legal action against one of the stockholders, bringing in all the necessary parties for that purpose, is too obvious to require discussion.   The contention of the defendant in this respect is not, we are persuaded, sustained by any well-considered authority.

Besides, if the statements in the counterclaims were put in the form of an original complaint by the defendant, it is perfectly clear that the matters in question could not be litigated without the presence of the Hudson Lumber Company as a necessary party.   This is really conceded by the defendant by his motion to bring in the corporation as a party defendant.   For this reason the defendant could not set up the facts alleged as counterclaims, because they could not be litigated without the presence of a new and necessary party.   *McConihe v. Hollister*, 19 Wis. 269; *Pennoyer v. Allen*, 50 Wis. 308, 310.   As the plaintiff has brought a legal action, and seeks nothing but a money judgment, he cannot be compelled to bring in other parties than the one he has chosen to make defendant.   *Coursen v. Hamlin*, 2 Duer, 513.   No other person is a *necessary* party to the litigation of his demand.   Sec. 2610, R. S., providing for bringing in a party whose presence is necessary for a complete determination of the action, or who has an interest in its determination to be protected, does not apply to this case.   *Chapman v. Forbes*, 123 N. Y. 532, 540, 541.   The case of *Stein v. Benedict*, 83 Wis. 603, is not inconsistent with this view.   It was there held, merely, that where a party, or one not a party, intervenes and files a petition for equitable relief against a judgment, he may have new parties brought in, if shown to be necessary by his petition, which is in substance a substitute for an original complaint for relief against the judgment.

It follows from these views that the circuit court properly denied defendant's motion to have the Hudson Lumber

Company brought in as a defendant, and its order in that respect is affirmed. These views dispose of all material questions presented by the record, and it follows, also, that the judgment of the circuit court is correct.

*By the Court.*— The judgment of the circuit court is affirmed.

