PERELES and another, Executors, Appellants, vs. MILWAU-
KEE COUNTY, Respondent.

*October 6—October 24, 1916.*

*Vendor and purchaser of land: Sale in gross or by the acre? "More or less."*

1. A contract for the sale, for a sum stated, of a tract of land con-
sisting of four separate parcels, each described as containing a
given number of acres "more or less,"—aggregating 120.749
acres,—is *held* to have been for a sale in gross, the circum-
stances being such as to show that the number of acres was re-
ferred to only for the purpose of description and that the inten-
tion was to sell and to buy all of a certain tract without regard
to its exact acreage.
2. The fact, in such case, that the tract contained 129.031 acres, in-
stead of 120.749, did not entitle the vendor to receive a greater
sum than the price named, there being no claim of fraud and
the discrepancy not being so great as to indicate gross mistake.
[3. What effect should be given to the words "more or less" as used
in the contract and prior correspondence, is not decided.]

APPEAL from an order of the circuit court for Milwaukee
county: W. J. TURNER, Circuit Judge. *Affirmed.*

The appeal is from an order sustaining a general demur-
rer to the complaint.

For the appellants there was a brief signed by *Pereles,
Strouse & Carter,* attorneys, and *Paul D. Durant* and *Alex.
L. Strouse,* of counsel, and oral argument by *Alex. L.
Strouse.* They contended, *inter alia,* that the sale contem-
plated by the parties was by the acre and not in gross.  Both
offer and acceptance were based upon an understanding that
the land should be sold at $325 per acre, and the sum of
$39,233.40, the total price referred to in the land contract, is
calculated by multiplying the number of acres mentioned by
the purchase price per acre of $325.  The reference to the
resolution of the board and to the offer of May 24th was a
proper means of determining the intention of the parties.

*Sayre v. Wilson,* 86 Ala. 151, 5 South. 157; *Phelps v. Henry,* 15 Ark. 297; *Hahn v. Cotton,* 136 Mo. 216, 37 S. W. 919; *Andrews v. Bell,* 56 Pa. St. 343; *Phillip v. Scott,* 2 Watts, 318; *Gordon-Cumming v. Houldsworth,* [1910] A. C. 537, 80 L. J. P. C. 47. Whether a sale is in gross or by the acre does not depend upon whether the payment is to be made in the gross sum or so much per acre, but upon the method of specifying the quantity of land, and depends upon the intention of the parties. *Hall v. McCammon* (Tenn.) 37 S. W. 1026; *McComb v. Gilkeson,* 110 Va. 406, 66 S. E. 77, 135 Am. St. Rep. 944; *Farrier v. Reynolds,* 88 Va. 141, 13 S. E. 393; *Norfolk T. Co. v. Foster,* 78 Va. 413; *Benson v. Humphreys,* 75 Va. 196; *Winton v. McGraw,* 60 W. Va. 98, 54 S. E. 506; *Crislip v. Cain,* 19 W. Va. 438; *Lawson v. Floyd,* 124 U. S. 108, 8 Sup. Ct. 409, 31 L. ed. 347. All facts and circumstances connected with the transaction which tend to show the intention may be considered. *Smith v. Evans,* 6 Bin. (Pa.) 102, 6 Am. Dec. 436; *Benson v. Humphreys,* 75 Va. 196; *Lawson v. Floyd,* 124 U. S. 108, 8 Sup. Ct. 409, 31 L. ed. 347. When the purchase price is an exact multiple of the number of acres, as in the case under consideration, it is an important element to be considered. *Sweet v. Marsh,* 133 App. Div. 315, 117 N. Y. Supp. 930; *Weaver v. Carter,* 10 Leigh (Va.) 37; *Crislip v. Cain,* 19 W. Va. 438. Where there is a matter of doubt the courts favor the construction that the sale is one by the acre; they do not look with favor on contracts of hazard, and the burden is placed upon the party who asserts the contract to be one of hazard. *Hull v. Watts,* 95 Va. 10, 27 S. E. 829; *McComb v. Gilkeson,* 110 Va. 406, 66 S. W. 77, 135 Am. St. Rep. 944. See, also, *Hall v. Graham,* 112 Va. 560, 72 S. E. 105, 27 Am. & Eng. Ann. Cas. 1257. The words "more or less," in cases where the sale was by the acre, cover cases only of slight discrepancies. *Brooks v. Halane,* 116 Ill. App. 383; *Baltimore P. B. & L. Soc. v. Smith,* 54 Md. 187, 39 Am. Rep. 374; *McComb*

*v. Gilkeson,* 110 Va. 406, 66 S. E. 77, 135 Am. St. Rep. 944; *Grayson v. Buchanan,* 88 Va. 251, 13 S. E. 457; *Benson v. Humphreys,* 75 Va. 196; *Triplett v. Allen,* 26 Gratt. 721, 21 Am. Rep. 320. Even if the sale in question were regarded as a sale in gross, the claimant is entitled to relief. The words "more or less" are intended to cover only a slight excess or deficiency with regard to the quantity conveyed. *Gentry v. Hamilton,* 38 N. C. 376, 379; *Couse v. Boyles,* 4 N. J. Eq. 212, 216, 38 Am. Dec. 514; *Bigham v. Madison,* 103 Tenn. 358, 52 S. W. 1074, 1075, 47 L. R. A. 267 (citing *Belknap v. Sealey,* 14 N. Y. 143, 67 Am. Dec. 120); *Harrell v. Hill,* 19 Ark. 102, 68 Am. Dec. 202; *Drake v. Eubanks,* 61 Ark. 120, 32 S. W. 492; *Stebbins v. Eddy,* 4 Mason, 414, 22 Fed. Cas. 1192; *Pratt v. Bowman,* 37 W. Va. 715, 17 S. E. 210; *Wheeler v. Boyd,* 69 Tex. 293, 6 S. W. 614; *Newton v. Tolles,* 66 N. H. 136, 19 Atl. 1092, 9 L. R. A. 50, 49 Am. St. Rep. 593; *Paine v. Upton,* 87 N. Y. 327, 334, 41 Am. Rep. 371; *Triplett v. Allen,* 26 Gratt. 721, 724, 21 Am. Rep. 320. See, also, *Docter v. Hellberg,* 65 Wis. 415, 27 N. W. 176; *Docter v. Furch,* 76 Wis. 153, 44 N. W. 648, 826; *S. C.* 91 Wis. 464, 65 N. W. 161; *Hackbarth v. Wollner,* 88 Wis. 476, 60 N. W. 704; *Butt v. Smith,* 121 Wis. 566, 99 N. W. 328.

For the respondent there was a brief by *Winfred C. Zabel,* district attorney, *William L. Tibbs,* special assistant district attorney, and *Daniel W. Sullivan,* assistant district attorney; and the cause was argued orally by *Mr. Sullivan* and *Mr. Tibbs.*

Rosenberry, J. The complaint admittedly states a cause of action if the sale contemplated by the parties was by the acre, and does not state facts sufficient to constitute a cause of action if the sale was in gross.

It appears from the complaint that the negotiations were carried on by T. J. Pereles, now deceased. On May 18,

1912, he addressed to the board of supervisors of *Milwaukee County* the following communication:

"I hereby offer for sale to the county of *Milwaukee* the tract in the town of Granville, comprising about 203 acres of land, more or less, adjoining the new house of correction site on the north, for seventy thousand dollars ($70,000).

"This land is bounded on the south by the new house of correction site, on the west by the Chicago, Milwaukee & St. Paul Railway Co., and on the north, part of the distance, by the so-called Chicago-Northwestern Belt Line. About 120 acres, more or less, of the land lie west of the Hopkins road, and about 80 acres, more or less, lie east of said road.

"If you decide that you are interested only in the land west of the road, I will sell that portion west of the Hopkins road for forty-three thousand dollars ($43,000).

"The title to the land is free and clear of all incumbrances and a free and complete abstract of title will be furnished. This offer to remain open to you until the 1st day of July, 1912.

"I, however, reserve the right to demand and receive a higher price than that above quoted in case the land is procured by the county under condemnation or appraisal proceedings.

"A map of the land offered herewith is attached to my offer to the county board of supervisors under date of June 22, 1911."

It appears that at that time Mr. Pereles was the owner of a tract of land in the town of Granville comprising about 203 acres; that a part of the tract lay on the west side of the Hopkins road and a part on the east side. That portion lying on the west side of the Hopkins road embraced parts of four governmental subdivisions.

Apparently the negotiations proceeded and on May 24, 1912, Mr. Pereles wrote another letter to G. J. Riemer, chairman of the committee, house of correction, which was as follows:

"At your request I have submitted the proposition of the sale of the lands to *Milwaukee County* situated west of the

Hopkins road in the town of Granville to the parties in interest and after fully considering the same I have this proposition to make: In case the county purchases the said land I will sell the same for $325 per acre, cash, or will take $43,000 for all of said land which lies west of Hopkins road in bonds of *Milwaukee County.*"

On July 9, 1912, the committee to whom the communication of May 24th was addressed reported to the county board of supervisors as follows:

"Your joint committee on house of correction and treasury and taxes, to whom was referred the communication of T. J. Pereles, found on page 41 of the proceedings of this board, under date of May 21, 1912, and on pages 57 and 58 of said proceedings under date of June 4, 1912, relative to the purchase of certain lands therein referred to for the location and maintenance of the house of correction of *Milwaukee County,* beg leave to report: that we have personally investigated the necessity for this purchase, and also the character of the lands in question, and we find those lands hereinafter described, which lie west of the Hopkins road, and which contain about 120.749 acres, more or less, are necessary to be acquired for the location and maintenance of the house of correction of *Milwaukee County;* that said lands are especially adapted as a building site for the new buildings which are to be constructed; that said lands are also valuable and necessary for the employment of persons who may from time to time be confined in said house of correction; that we have investigated the value of lands and find that the price at which these lands are offered, namely, $325 per acre, is fair and reasonable.

The report further stated that Mr. Pereles was willing to accept in payment the sum of $14,233.40 in cash and give a land contract by the terms of which the remainder of the purchase price was to be paid in five equal annual instalments of $5,000 each.

The board of supervisors adopted the report and passed a resolution authorizing the chairman of the board and the county clerk to purchase the lands upon the terms specified

in the report, in which resolution the lands were described as follows:

"The north half ($\frac{1}{2}$) of the northwest quarter ($\frac{1}{4}$) of the southeast quarter ($\frac{1}{4}$) of section 26, town 8 north, range 21 east, excepting a triangular piece cut away from the southwest corner by Chicago, Milwaukee & St. Paul Railway Company and ground covered by track of said railroad, leaving about nineteen (19) acres, more or less.

"That part of the northeast quarter ($\frac{1}{4}$) of the southwest quarter ($\frac{1}{4}$) of section twenty-six (26), town 8 north, range twenty-one (21) east lying on the north side of said railroad and containing about one and forty hundredths (1.40) acres more or less.

"That part of the east half ($\frac{1}{2}$) of the northwest quarter ($\frac{1}{4}$) of section 26, town 8 north, range 21 east, bounded and described as follows: Commencing at the southeast corner of said east half of the northwest quarter ($\frac{1}{4}$) of said section, running thence north on the quarter-section line 25.82 chains; thence west on a line and parallel with the north and south line of said quarter-section 19.655 chains to a point; thence south 8.47 chains to the Milwaukee & La Crosse Railroad track; thence in a southeasterly direction along said railroad track to the south line of said east half ($\frac{1}{2}$) of said quarter-section; thence east along said south line 7.095 chains to place of beginning, containing 38.349 acres of land, more or less.

"All that part of the south half (S. $\frac{1}{2}$) of the northeast quarter ($\frac{1}{4}$) of section 26, town 8 north, range 21 east, which lies west of the so-called Hopkins road, as said road is now laid out and located, containing 62 acres of land, more or less."

The resolution contained the following recital:

"Whereas the county board of *Milwaukee County* has heretofore decided to relocate the house of correction of *Milwaukee County,* and did heretofore for that purpose purchase certain lands located in the town of Granville, *Milwaukee County,* known as the Zautcke and Reichert tracts; but the structure, buildings and equipment for said relocation have not as yet been erected or constructed; but such construction is contemplated in the near future; and

"Whereas, it now appears that it is necessary to secure other and additional lands for said relocation; and

"Whereas, the lands owned by T. J. Pereles, adjacent to said lands above referred to and hereinafter described and referred to, are necessary for and are especially valuable as a building site for said buildings so to be constructed and are necessary for the maintenance of said house of correction and for the employment of persons who may from time to time be confined therein; now, therefore, be it . .. ."

On July 19, 1912, Mr. Pereles and wife as vendors entered into a contract with the county of *Milwaukee* for the sale of the premises in accordance with the terms of the resolution adopted by the county board.     In the land contract the premises were described as they were described in the resolution adopted by the county board, and the contract was in the usual form of such contracts; the clause which stated the consideration being as follows:

"That the said vendee [defendant] does hereby, for value received, promise and agree to pay or cause to be paid to the said vendor the sum of thirty-nine thousand two hundred thirty-three and 40/100 dollars ($39,233.40) in the manner following:" [Here are specified the amounts and dates of payment.]

"Said payments to apply as paid and when fully completed as the purchase money of the lands and premises hereinafter described."

At the time the land contract was executed a deed of the premises was also executed and delivered in escrow, the same to be finally passed when the last payment should be made.

Mr. Pereles died June 8, 1913; but before his death, upon a survey made by the defendant, it appeared that that part of the tract which was supposed to contain 62 acres in fact contained 70.282 acres; so that the total area of the tract was 129.031 acres instead of 120.749, and on September 3, 1912, Mr. Pereles filed with the county clerk a claim for $2,691.65, the same being for the excess acreage at the rate of $325 an acre.     The claim was disallowed.     Appeal was taken therefrom to the circuit court for Milwaukee county, where formal

pleadings were filed and the defendant's demurrer to the complaint was sustained.

Applying the law as stated by this court in *Docter v. Furch,* 76 Wis. 153, 44 N. W. 648, 826, we are of the opinion that the sale in the instant case is a sale in gross, and falls within the second class; that is, it is a sale of a tract in which, though a supposed quantity by estimation is mentioned in the contract, the reference is only for the purpose of description and the circumstances are such as to show that the parties intended to risk the contingency of quantity. *Hackbarth v. Wollner,* 88 Wis. 476, 60 N. W. 704. In this view of the case it is not necessary to determine what effect the words "more or less" as used in the correspondence and land contract have. Here the vendor intended to sell and the county intended to purchase all that part of the tract lying west of the Hopkins road and within the boundaries indicated, and that without reference to its exact acreage. There is no claim of fraud and the discrepancy is not so great as to indicate gross mistake.

*By the Court.*—Order affirmed.