STADELE, Respondent, vs. RESNICK, Individually and as EXECUTRIX, Appellant.

*December 3, 1956—January 7, 1957.*

352

For the appellant there was a brief and oral argument by *Lorin L. Kay* of Richland Center.

For the respondent there was a brief and oral argument by *William L. McCusker* of Madison.

FAIRCHILD, C. J.   Where the circumstances are such that a party fails to read an instrument after he has called the attention of the drafter to written terms to be included, he may be excused for signing without reading and not be precluded from seeking reformation of the instrument. Negotiations preceding, as well as conduct and negotiations subsequent to the signing, are relevant, and if, upon the whole case, it appears that the mistake was mutual at the time the deed was executed, such evidence then is controlling and sustains findings and conclusions based thereon requiring reformation. 12 Am. Jur., Contracts, p. 630, sec. 137; *Silbar v. Ryder,* 63 Wis. 106, 23 N. W. 106; *Butt v. Smith,* 121 Wis. 566, 569, 99 N. W. 328; *Rosandich v. Chicago, N. S. & M. R. R.* 185 Wis. 184, 191, 201 N. W. 391.

The continued recognition of rights based upon the omitted terms acknowledged by the interested parties is generally sufficient to account for a delay in instituting suit to enforce the reformation. "Delay will thus be excused . . . by defendant's silence or other conduct indicating acquiescence in plaintiff's right." 21 C. J., Equity, pp. 243, 244, sec. 241 b. The strong testimony, as indicated in the statement of facts, necessarily has a bearing on the question of reformation as well as upon the defense of laches referred to later.

At the conclusion of the trial, the learned trial judge decided that a reversionary clause existed, and directed reformation of the deed with respect to the cropping rights stipulated in the written option, as claimed by the plaintiff.

As to damages suffered by the plaintiff's being deprived of cropping rights during the year 1955, the court set them at $300. There is no dispute as to that item. The counterclaim of the defendant was dismissed.

The trial judge, in announcing his decision, said:

"The burden on the plaintiff in this case is, of course, to establish his case by a clear, satisfactory, and convincing preponderance of the evidence to a reasonable certainty. I believe our court has even used the term 'beyond reasonable controversy.' "

It was stated further that:

"In fact the case seems entirely one-sided to me. It is undisputed that these parties met and agreed on certain terms of sale and purchase; those terms of sale and purchase are specifically set forth in the option agreement. There is no question but what it was within the minds of both parties and within the contemplation of both parties that one of the conditions or reservations of this transaction, of this ultimate deed, was to be a reservation of cropping rights in this plaintiff as to all portions of the 20-acre tract which wasn't used by Mrs. Eskin or her successors or which might not be thereafter so used. It was within the

minds, and contemplation of the parties that this reservation or right was limited, however, to the restriction that if at any time Mrs. Eskin or her successors in title should . . . at any time occupy additional portions of this real estate for the purpose of operating a drive-in theater at any time that the operations of that business of operating such a theater might require that then the cropping rights of the plaintiff Stadele would accede to the right of Mrs. Eskin and her successors to so use this land."

This statement, which is a summary of the findings recited in the statement of facts, was based upon the negotiations which concluded in the written option and the deed. The findings of fact and conclusions of law are based upon negotiations occurring at the time the option was entered into, together with the acts of the parties occurring at the time the deed was drawn and executed in the office of the lawyer for Mrs. Eskin, and also, of course, upon subsequent actions of the contracting and interested parties, which are consistent with the terms set forth in the written option. The mistake was a mutual mistake, the minds of the parties having actually met upon terms as claimed by plaintiff. The testimony referred to shows the purpose and the plan of the respective parties and, under the rules in law and equity, permits a determination of reformation of the instrument. The mistake was reciprocal. It clearly was common to both parties. Each alike labored under the misconception with respect to the omission of the agreement on which the minds met. The acts of the parties show an interpretation and understanding consistent only with that conclusion. The findings of the trial court are amply sustained. The cropping rights were a part of a consideration of the deed, and the terms of the option were those of the agreement and properly to be considered in reforming the deed.

As to the defense of laches, the trial court gave due consideration, not only to the manner of executing the

deed from which the terms of the reservation set forth in the option were omitted, but also to the fact that Mrs. Eskin not only did not interfere with plaintiff's cropping rights but freely and frankly recognized that they existed. There was interference only after the death of Mrs. Eskin and the appointment of the executrix. This action followed upon the interference of the executrix. No question of fraud or bad faith or inequitable conduct on plaintiff's part exists, and the defendant has suffered no damage. Both parties, under the evidence bearing upon the question, understood the matter, and the court properly held that plaintiff was not barred by laches.

*By the Court.*—Judgment affirmed.