H. & R. Truck Leasing Corporation, Respondent, v. Allen and wife, Appellants.

*November 25, 1964—January 5, 1965.*

For the appellants there was a brief by *Harvey, Weber, Gerard & Jones* of Racine, and oral argument by *Richard G. Harvey, Jr.*

For the respondent there was a brief by *McEvoy & Munger* of Kenosha, and oral argument by *Earle Munger.*

GORDON, J. "There is no surer way to find out what parties meant, than to see what they have done. Self-interest stimulates the mind to activity, and sharpens its perspicacity." *Insurance Co. v. Dutcher* (1877), 95 U. S. 269, 273, 24 L. Ed. 410.

Even though the written option is somewhat ambiguous, the conduct of the parties (or their counsel) in this case vigorously establishes that the parties intended to sell by the acre. During the entire negotiations there was never any discussion of a gross sales price. The parties may have individually calculated what the total expenditure or receipt would be, but they did not communicate with one another as to an overall price.

Mila Allen testified that it was her intention to sell "for about $7,500." However, when asked whether she conveyed that intention to the buyer, she replied, "Well, I imagine Mr. Holderness knew." Myron Allen was also asked whether any total price was mentioned. He responded, "Well, there could have been, but I don't remember." The buyer's representative, on the other hand, categorically and unqualifiedly denied that there was any discussion of a gross sales price. The trial court was surely entitled to accept the latter testimony.

While it would appear that there had been no discussion as to a lump sum for the entire tract, the record is very clear that there were direct negotiations as to the price per acre. Originally, the Allens had demanded $2,000 per acre. Subsequently, Myron Allen indicated that he would be interested in selling at $1,500 an acre. Ultimately, the parties reached an agreement to sell at $1,250 an acre.

After the option was signed, the vendors' conduct continued to demonstrate their acquiescence to the concept of a sale based on acreage. For example, the sellers' attorney addressed a letter to the buyer on June 13, 1962, requesting a copy of a survey. This letter stated:

"Inasmuch as area means quite a bit in the price, *as the land is sold per acre,* I think you will see that it is material that we must see a copy of Mr. Hungerford's survey to determine how he came out with such a low area." (Emphasis added.)

This letter was actually typed by one of the sellers, Mila Allen, although it was signed by her attorney. It constitutes a remarkably explicit insight into the sellers' intention to receive a sales price determined by the number of acres.

Another letter from the sellers' attorney was sent to the buyer on July 17, 1962. This letter, also typed by Mila Allen, indicated the sellers' calculation of the acreage at 6.1134,

for a total selling price of $7,641.75. In their counterclaim, the sellers computed the acreage at 5.86, for a sales price of $7,325. Thus, as late as July 17, 1962, the sellers were insisting upon a total sales price in excess of the lump sum which they now contend was agreed upon.

The higher price which the sellers demanded on July 17, 1962, resulted from their erroneous assumption that the property involved contained 6.1134 acres; however, this event tends to confirm that the sellers actually expected to receive a price based on the number of acres. The trial court determined that the correct number of acres involved is 4.08, and this figure has not been questioned upon this appeal.

A closing statement, prepared upon the stationery of the sellers' attorney, was received into evidence. It, too, reflected the sellers' contention that the total purchase price was $7,641.75, apparently also based upon the sellers' erroneous computation as to the number of acres involved in the sale.

In determining the parties' intent, it is appropriate to consider factors happening before and after the signing of an agreement. In *Stadele v. Resnick* (1957), 274 Wis. 346, 352, 80 N. W. (2d) 272, the court stated:

"Negotiations preceding, as well as conduct and negotiations subsequent to the signing, are relevant, and if, upon the whole case, it appears that the mistake was mutual at the time the deed was executed, such evidence then is controlling and sustains findings and conclusions based thereon requiring reformation."

However, even if we were to ignore the items of conduct referred to above and were to consider only the written option, we would find modest support for the trial court's conclusion.

Mr. Justice FRANKFURTER once said, "In law also the emphasis makes the song." *Bethlehem Co. v. State Board*

(1947), 330 U. S. 767, 780, 67 Sup. Ct. 1026, 91 L. Ed. 1234. The emphasis which was employed in the instant writing is difficult to treat lightly.

As originally prepared, the typed option referred to 5.94 acres. When a question arose as to the correctness of this figure, a tax receipt was produced which showed that the parcel contained 5.86 acres, and a correction was written in ink over the typed figures. The option further expressly provided for a certain price "PER ACRE." The last two words were both capitalized and underlined. These are the only words on the entire instrument which were put in capital letters and likewise the only words which were underscored. We find it reasonable to conclude that this degree of emphasis should be accorded weight in attempting to determine the parties' intentions.

In *Docter v. Furch* (1890), 76 Wis. 153, 169, 44 N. W. 648, 44 N. W. 826, the court set forth four classifications for determining whether, in cases like this, a sale is in gross or per acre. In our opinion, the facts surrounding the instant case fully establish that a sale by the acre was intended by both parties, as the trial court held.

While both parties may have anticipated that there was a given amount of land in the parcel, they committed themselves to a price based upon acreage; they both took the risk that there was more or less acreage in the tract than was contemplated. It is particularly significant that the sellers were quick to impose this risk upon the buyer when the Allens thought that the area was greater than the 5.86 acres recited in the option. It follows that they must also have risked the possibility of there being less acreage.

In effect, the option in this case was reformed by the trial court to reflect a different amount of land: 4.08 acres instead of 5.86 acres. However, this does not in any way

alter the trial court's interpretation that the parties' primary intention was to sell by the acre.

Under the terms of the written option and also upon the conduct of the parties, we believe that the trial court correctly determined that this was a sale by the acre rather than by the tract. Its finding is clearly not against the great weight and clear preponderance of the evidence.

*By the Court.*—Judgment affirmed.