SMITH and wife, Appellants, v. OSBORN and another, copartners, d/b/a ROCK VALE, Respondents.

*No. 260. Submitted under sec. (Rule) 251.54 December 2, 1974.—Decided December 20, 1974.*
(Also reported in 223 N. W. 2d 913.)

266

The cause was submitted for the appellants on the brief of *T. P. Bidwell* and *Bidwell & Jones,* all of Janesville; and for the respondents on the brief of *Gerald W. Jaeckle* and *Grutzner, Jaeckle & Byron, S. C.,* all of Beloit.

CONNOR T. HANSEN, J.   The land in question was part of a farm located in Rock township, Rock county, Wisconsin, purchased in 1961, by the appellants from the Edward Cunninghams. The land had been represented by the Cunninghams to contain 97 acres. The Smiths

sold two small parcels, leaving 90 of the original 97 acres in their possession.

Osborn, one of the respondents, who had contacted Smith with regard to another matter, became interested in the land as a possible mobile homesite. Negotiations took place in the winter of 1970, between Smith, a real estate broker since 1964, and Osborn, a land developer of more than fifteen years' experience. Smith represented that he would sell the 90 acres for $180,000. Osborn testified he was only interested in 70 acres for which Smith quoted a price of $2,000 per acre, or $140,000.

The negotiations culminated in the execution of an offer to purchase on April 27, 1970, by Roger K. and Lucille P. Smith, as vendors, and Osborn and Klobucar, as purchasers. The description of the property in the offer to purchase incorporated by reference an attached map indicating the property in red. The offer further noted that the property contained "70 acres more or less."

A second amendment to the offer to purchase also dated April 27, 1970, contained the following provision:

"2. *Clarification of Paragraph No. 2 In Addendum:* Paragraph No. 2 of the Addendum shall be deemed rewritten in its entirety to provide as follows:

"Provided the installment payments required by the land contract are then current, Buyer shall be entitled to receive a Warranty Deed from Sellers to a parcel or parcels selected by Buyer provided Buyer prepays the contract in an amount equal to $2,000.00 per acre selected; provided further, however, that the land fronting on U. S. Highway 51 to a depth of 300 feet shall be conveyed to Buyer only upon a payment equal to $75.00 per running foot.

"All payments made under this paragraph shall be applied to reduce the balance owed on contract price."

The land contract was executed by the four parties on October 20, 1970. The acreage was described in the land contract as being "approximately 70 acres." The contract

called for a purchase price of $140,000, with a down payment of $29,500, the balance to be paid in four equal annual installments. Each payment carried with it the obligation on the part of the vendors to transfer by warranty deeds a proportionate part of the parcel under the following provision:

"8. *Warranty Deeds During Contract:* The parties agree that upon request by purchaser vendor agrees to convey by warranty deed parcels selected by purchaser, during the term of the land contract, as follows:

"A. 20% of the total 70 acres when the down payment is made.

"B. 20% of the total 70 acres as each annual payment is made after the down payment is made, provided, however, that the land fronting on U. S. Highway 51 to a depth of 300 feet shall be conveyed by vendor to purchaser only upon a prepayment upon the land contract, said prepayment computed at the rate of $75.00 per running foot.* . . .

". . .

"* If Highway 51 frontage is selected, the amount computed at $75.00 per running foot under Paragraph 8 shall be reduced by the acreage within said frontage land multiplied by $2,000.00 per acre. All payments under Paragraph 8 shall be credited upon the original purchase price. . . ."

The initial payment was made and a parcel selected by the vendees containing 15.37 acres was deeded to them by the vendors. About the time of the due date for the October, 1971, payment, it was determined by survey that the parcel contained only 53.59 acres instead of 70 acres, for a discrepancy of 23.4 percent. Negotiations between Smith and Osborn ensued.

It is undisputed that Smith made several proposals for modifying the agreement both at a meeting with Osborn in late October, 1971, and at a subsequent meeting with Osborn and his attorney, Roger D. O'Neal, on November 18, 1971. The proposals made were summarized in letters from Smith to Osborn dated November 17, 1971, and

November 23, 1971, and in a written memorandum prepared by Smith and used by him at the November 18, 1971, meeting. One plan called for a reduction of the final principal payment and a reduction of the interest payments based on a lower principal amount due. The lower principal amount due was computed by Smith by multiplying 53.59 acres by $2,000 per acre. The second proposal involved the same reduction of principal due, but reduced the 1971 payment so that, combined with the down payment, it would equal approximately 40 percent of the reduced purchase price. Under this plan, the 1971 payment would include principal sufficient to cover a conveyance of 6.23 acres at $2,000 per acre plus interest based on the principal amount which was reduced because of the acreage shortage. Subsequent payments were also reduced so as to equal 20 percent of the reduced purchase price each.

Smith testified that these proposals were made upon the condition of his getting a comparable adjustment of his land contract with his vendor, Mrs. Cunningham. Osborn, Roger D. O'Neal and Jerome Elliott, Mrs. Cunningham's lawyer at the time, denied that this condition was ever imposed.

On November 26, 1971, Osborn and Klobucar tendered a payment of $18,426 which included $12,600 as principal for 6.3 acres and interest of $5,826, which represented interest due on the balance of the purchase price calculated at the reduced acreage price. This payment was accepted by the appellants, and on January 28, 1972, they deeded 6.3 acres to Osborn and Klobucar.

It was undisputed that Mrs. Smith took no part in the negotiations either for the original sale or for the alleged modification of the land contract. It was also undisputed that she signed all of the documents as necessary, including the deed for 6.3 acres, which was tendered on January 28, 1972. Moreover, it was conceded that Mrs. Smith,

who worked as her husband's secretary, typed the letters from him to Osborn dated November 17, 1971, and November 23, 1971, which included the outline of the modification proposals.

Based on this and other evidence, the trial court found that the land contract was for the purchase of land by the acre and ordered a reformation of the contract to reflect the lower acreage based on mutual mistake of fact. The trial court also found that the contract had been modified by agreement of the parties, and that Smith had acted as the agent for his wife in negotiating the modification.

The following issues are dispositive of this appeal:

1. Did the trial court err in granting a reformation of the land contract?

2. Was the land contract subsequently modified by agreement of the parties?

### Reformation.

The first question to be decided in determining whether the instant land contract was subject to reformation is whether the sale was in gross or by the acre.

In *Docter v. Furch* (1890), 76 Wis. 153, 169, 170, 44 N. W. 648, 44 N. W. 826, this court stated that there were four classifications of contracts where the land description and purchase price ostensibly were based on the entire parcel:

"An able judge, after an analysis of several adjudged cases, classified them thus: 'Sales in gross may be subdivided into various subordinate classifications: (1) Sales strictly and essentially by the tract, without reference in the negotiation or in the consideration to any estimated or designated quantity of acres; (2) sales of the like kind in which, though a supposed quantity by estimation is mentioned or referred to in the contract, the reference was made only for the purpose of description, and under such circumstances or in such a manner as to show that

the parties intended to risk the contingency of quantity, whatever it might be, or how much soever it might exceed or fall short of that which was mentioned in the contract; (3) sales in which it is evident, from extraneous circumstances of locality, value, price, time, and the conduct and conversations of the parties, that they did not contemplate or intend to risk more than the usual rates of excess or deficit in similar cases, or than such as might be reasonably calculated on as within the range of ordinary contingency; (4) sales which, though technically deemed and denominated "sales in gross," are in fact sales by the acre, and so understood by the parties. . . .' "

Thus, the question of whether a land contract is a sale in gross or a sale by the acre is a matter of the intention of the parties. *H. & R. Truck Leasing Corp. v. Allen* (1965), 26 Wis. 2d 158, 131 N. W. 2d 912; *Pereles v. Milwaukee County* (1916), 164 Wis. 208, 159 N. W. 719.

In determining the intention of the parties, this court has held that it is proper to consider the conduct of the parties and the negotiations which took place, both before and after the execution of the documents, and to consider all related documents of the parties. *H. & R. Truck Leasing Corp. v. Allen, supra,* pages 162, 163; *Stadele v. Resnick* (1957), 274 Wis. 346, 352, 80 N. W. 2d 272.

The trial court determined that the contract in question called for a sale by the acre. This finding is subject to the great weight and clear preponderance standard of review. *Baldwin v. Anderson* (1968), 40 Wis. 2d 33, 41, 161 N. W. 2d 553; *H. & R. Truck Leasing Corp. v. Allen, supra,* page 165.

The case of *Docter v. Furch, supra,* cited by the Smiths, while correctly setting forth the law with regard to the intention of the parties, is factually distinguishable from the present case to the extent that it found a sale of the parcel rather than a sale by the acre. In that case the negotiations of the parties never mentioned a per acre price. It was further apparent that the purchasers were so anxious to have the seller sign the contract for sale

that they ignored the seller's warnings that she did not know the exact acreage and that the purchasers should first get the property surveyed. Instead of heeding her advice, the purchasers inserted 49 acres in the contract, saying it didn't matter, and that she should sign. *Docter v. Furch, supra,* page 165.

In this case, the only evidence tending to show the intention to make a sale in gross was the listing in the offer to purchase and in the land contract of a total purchase price rather than a price per acre. Even this evidence is contradicted by the provisions in those documents providing for the deeding of portions of the property as payments were made at the rate of $2,000 per acre. The higher price for the acreage abutting on Highway 51 does not defeat the inference from these provisions that the sale envisioned a price of $2,000 per acre as Smith explained that the higher price was only to discourage release of these acres until the final payment was made. As all amounts paid were credited to the balance due on the contract, the eventual price that would be paid for these acres was also $2,000 per acre.

There was other evidence supporting the finding of the trial court. At the initial negotiation session, Smith offered the full 90 acre plot to Osborn for $180,000. Osborn said he was interested in a smaller parcel, at which point Mr. Smith offered to sell him 70 acres at $2,000 per acre or $140,000, the price finally agreed upon. When Smith was notified of the acreage discrepancy and that the purchasers were concerned about their ability to develop the lesser acreage unless the $2,000 per acre price was adhered to, he made several proposals for a modification of the agreement. Each proposal was based on a reduction of the principal amount of the contract to the extent of the acreage discrepancy multiplied by $2,000 per acre. These proposals were also set forth in the November 17, 1971, and November 23, 1971, letters from Smith to Osborn. Smith also received a letter dated

November 8, 1971, from the purchasers' attorney setting forth the substance of the proposal made by Smith to Osborn in late October, 1971. In that proposal, Smith offered to adjust the purchase price at the "original rate of $2,000 per acre." Smith never questioned the accuracy with which this letter set forth his proposal. Finally, the payment made by Osborn and Klobucar on November 26, 1971, was computed on the basis of a conveyance of 6.3 acres at $2,000 per acre. The appellants accepted the payment and executed a deed for 6.3 acres on January 28, 1972.

As was so aptly stated in *H. & R. Truck Leasing Corp. v. Allen, supra,* page 161, quoting from *Insurance Co. v. Dutcher* (1877), 95 U. S. 269, 273, 24 L. Ed. 410:

". . . 'There is no surer way to find out what parties meant, than to see what they have done. Self-interest stimulates the mind to activity, and sharpens its perspicacity.' "

The finding of the trial court that the parties intended a sale by the acre was not against the great weight and clear preponderance of the evidence.

In describing the acreage, the offer to purchase used the term "more or less," and the land contract the term "approximately." This court has held "approximately" to mean "near to correctness" or "nearly exact." *Hartsman v. Mueller* (1928), 195 Wis. 485, 487, 218 N. W. 854. The term "more or less" has been held to cover an excess or deficit that is within reasonable limits; it does not cover a situation where there is evidence of a gross mistake. *Wisconsin Realty Co. v. Lull* (1922), 177 Wis. 53, 187 N. W. 978. Thus, we are of the opinion that the contract in question, as found by the trial court, falls within classification (3) as one in which the parties did not contemplate or intend to risk more than a reasonable excess or deficit in acreage. *Docter v. Furch, supra.*

Appellants take the position that it was incumbent upon the respondents to show that they reasonably relied upon the representation by Smith that the parcel in question contained 70 acres before they have a right to reformation. They contended that *Docter v. Furch, supra,* is indistinguishable in this regard and stands for the proposition that purchasers with the expertise and ability of respondents in the field of land development cannot be found to have reasonably relied upon the representations of the seller as to acreage.

*Docter v. Furch, supra,* is distinguishable in this regard. The seller in that case, according to two disinterested witnesses, disclaimed any knowledge of the exact amount of the acreage involved. Further, she had no expertise herself but was merely the owner of the land and suggested they first have a survey of the land. In the instant case, Smith had been a real estate broker for six years prior to the transaction.

Furthermore, in the *Docter Case, supra,* the trial court found the purchasers to be very familiar with the parcel in question long before the purchase was attempted. In the present case, Osborn, although admittedly a real estate developer, had seen the land only when he drove by it some twenty years before, and Klobucar had seen the land only a couple of times before the contract was executed. The respondent purchasers checked the Rock county plat books and the Agriculture Service office records which confirmed the acreage represented by Smith. Osborn further testified that the property line was so irregular that you couldn't determine how many acres were in it by just looking at it.

Under the circumstances of the present case, it was reasonable for Osborn and Klobucar to rely on the representation of Smith as to the total acreage. *See, e.g., Wilks v. McGovern-Place Oil Co.* (1926), 189 Wis. 420, 207 N. W. 692.

Moreover, we are of the opinion that appellants are in error in concluding that reliance is always essential for obtaining reformation of this type of contract. In *Docter v. Furch, supra,* this court dealt with the reliance argument as an element of fraud because it was held that a contract which fell into either category (1) or (2) could be reformed as to the acreage and purchase price only if fraud were shown. However, as to contracts falling into category (3) and (4), it is generally held that reformation can be had upon the showing of mutual mistake of fact by all the parties to the conveyance. *See, e.g., Hajec v. Novitzke* (1970), 46 Wis. 2d 402, 175 N. W. 2d 193; *Schultz v. Rudie* (1957), 275 Wis. 99, 80 N. W. 2d 804; 92 C. J. S., *Vendor & Purchaser,* pp. 135–137, sec. 266.

The appellants do not contend, as well they cannot on the record, that the parties were not mistaken as to the amount of acreage actually involved. Nor is it contended that the 23.4 percent acreage discrepancy was not beyond the reasonable limits contemplated by the use of the terms "approximately" and "more or less" in the subject documents. The trial court was correct in concluding that the contract should be reformed to reflect the actual acreage with a proportionate reduction of the purchase price and time payment schedule.

*Modification by subsequent agreement.*

In addition to the finding by the trial court that the land contract should be reformed, the trial court also found that the parties had agreed to modify the land contract in such a way as to have the same effect.

The appellants first contend that there never was an agreement to modify the original land contract. They do not deny that Smith proposed several modifications, but claim that the proposals were never agreed upon.

The trial court found that Smith had proposed, at the meeting of November 18, 1971, and also by letter dated November 17, 1971, that the land contract be modified by a reduction of the purchase price at the rate of $2,000 per acre of discrepancy, and that the reduction be reflected in the next payment with a corresponding transfer of about 6.3 acres. The purchasers accepted this proposal in substance, although the exact figures had been inaccurately computed by Smith in his proposal, by making the reduced payment and by accepting the deed for 6.3 acres. The appellants' acceptance of the modification was evidenced by their acceptance of the reduced payment and the execution of the deed; whereas they had previously demanded the full payment of $27,625 under the original contract.

This court has specifically recognized that acceptance of a proposed modification of a written contract can be signified by the actions of the parties under the objective rule of contracts. Such circumstances have been found to exist where the proposed modification calls for modified payment and the modified payment is tendered and accepted. *Everlite Mfg. Co. v. Grand Valley Machine & Tool Co.* (1969), 44 Wis. 2d 404, 171 N. W. 2d 188. The finding of the trial court that there was a subsequent modification of the contract by agreement of the parties is not against the great weight and clear preponderance of the evidence.

The appellants also argue that the negotiations concerning the modification of the land contract were conducted solely by Mr. Smith who had no authority to act as agent for his wife. Thus, it is argued that Mrs. Smith never consented to the modification. It is contended that, if Mrs. Smith had been given the opportunity to negotiate the modification, she would have conditioned her acceptance on obtaining a similar modification of the Cunningham land contract. Smith's assertion at trial

that he had similarly conditioned his modification proposal was rejected by the trial court and that finding is not challenged on appeal.

The trial court found that Smith acted as the agent for his wife and that she was bound to the modification agreement by his negotiations in her behalf and by her acceptance of the reduced payment and execution of the deed for 6.3 acres.

In Wisconsin, there is no presumption of agency between a husband and wife merely by virtue of the marital relationship. *Lee v. Junkans* (1962), 18 Wis. 2d 56, 117 N. W. 2d 614; *Lange v. Andrus* (1957), 1 Wis. 2d 13, 83 N. W. 2d 140. However, the relationship between husband and wife is of such a nature that circumstances, which in the case of strangers would not indicate the creation of authority or apparent authority, may indicate it in the case of husband and wife. *Lee v. Junkans, supra; Builder's Lumber Co. v. Stuart* (1959), 6 Wis. 2d 356, 362, 94 N. W. 2d 630.

The requirements of apparent agency were set forth by this court in *Everlite Mfg. Co. v. Grand Valley Machine & Tool Co., supra,* page 412, as follows:

" '. . . (1) Acts by the agent or principal justifying belief in the agency; (2) knowledge thereof by the party sought to be charged; and (3) reasonable reliance thereon by a third party. . . .' "

See also: *Ivers & Pond Piano Co. v. Peckham* (1966), 29 Wis. 2d 364, 139 N. W. 2d 57; *Mattice v. Equitable Life Assurance Society* (1955), 270 Wis. 504, 71 N. W. 2d 262.

It is undisputed in this case that all the negotiations, both prior to the signing of the land contract and subsequent to the discovery of the acreage discrepancy, were done to the exclusion of Mrs. Smith. Mrs. Smith testified that it was their practice that her husband conduct the negotiations and that she would, at the conclusion of the

negotiations, read the documents and sign them as she had in this case. By letter, dated October 19, 1971, from Klobucar, Mrs. Smith was informed of a possible discrepancy in the acreage. The discrepancy was confirmed and the status of negotiations for a modification were reported in a letter to Mrs. Smith, dated November 8, 1971, from the attorney for the purchasers. It was also undisputed that Mrs. Smith, acting as the secretary for her husband, typed the letter of November 17, 1971, which contained the substance of the modification proposal subsequently acted upon by the purchasers in tendering their reduced payment, and the letter of November 23, 1971, which set forth the alternative proposal which was not adopted. The record also discloses that Mrs. Smith signed the deed which transferred 6.3 acres pursuant to the reduced payment made by the purchasers in accordance with the alleged modification agreement.

The undisputed facts in this case raise the reasonable inference that Mr. Smith was authorized to act as the agent for Mrs. Smith in conducting the negotiations with the purchasers for the modification of the land contract. The undisputed facts also raise the reasonable inference that Mrs. Smith had knowledge of the negotiations by her husband and made no objections thereto. These inferences, as properly drawn by the trial court, were not against the great weight and clear preponderance of the evidence. Additionally, we are of the opinion that the reliance by the purchasers was reasonable and that the trial court correctly concluded that an apparent agency relationship existed.

The appellants also claim that there was no consideration offered or given for the modification. This court has consistently held that no new consideration is required in order to support a modification of an executory contract. *Everlite Mfg. Co. v. Grand Valley Machine & Tool Co., supra; Black Eagle Oil Co. v. Globe Oil & Refining*

*Co.* (1958), 3 Wis. 2d 340, 88 N. W. 2d 684; *Miller v. Stanich* (1930), 202 Wis. 539, 230 N. W. 47, 233 N. W. 753.

The judgment of the trial court is affirmed.

*By the Court.*—Judgment affirmed.