Teddy A. Schlueter, Plaintiff-Respondent,
v.
Kae Hubred and Kim Hubred, Defendants-Appellants.
No. 03-1093.
Court of Appeals of Wisconsin.
Opinion Filed: April 1, 2004.
Before Deininger, P.J., Dykman and Vergeront, JJ.
¶1. DYKMAN, J.
Mrs. Kae Hubred and Mr. Kim Hubred appeal from a judgment that allows Teddy Schlueter to purchase their farm for $215,000. The Hubreds contend that the trial court erred by finding that Schlueter clearly and satisfactorily proved: (1) the terms of an oral agreement providing that Schlueter could purchase the Hubreds' farm for $215,000; (2) unjust enrichment; and (3) reliance as required by Wis. Stat. § 706.02 (2001-02).[1] They also assert that no confidential relationship existed for the purposes of a constructive trust. Finally, they claim that there was no proof that Mr. Hubred assented to the real estate transaction. We affirm.

FACTS
¶2. The parties dispute material facts of this case. However, uncontroverted documents establish the following: Schlueter defaulted on a mortgage on his farm where he operated a horse boarding business. In 1998, Affiliated Mortgage Corp., a second mortgage holder, bought the property at a sheriff's auction. Schlueter negotiated an option to purchase the farm for $215,000 from Affiliated Mortgage. He could not afford to execute the option and assigned it to Mrs. Hubred. She exercised the option in 1999.
¶3. The parties agree that Mrs. Hubred was good friends with Schlueter when he assigned his option to her. Mrs. Hubred and her husband had known Schlueter for many years because they grew up in the same farming community. The parties dispute whether the Hubreds orally promised Schlueter that he could buy the farm back from them for $215,000 when he was financially able. We will further develop the facts of the dispute below.

DISCUSSION
¶4. Wisconsin Stat. § 706.02 is a statute of frauds which requires parties to adhere to certain formalities when conveying an interest in land. If a transaction that conveys an interest in land does not satisfy § 706.02, a court may enforce the transaction in equity, if:
... all of the elements of the transaction are clearly and satisfactorily proved and, in addition:
(1) The deficiency of the conveyance may be supplied by reformation in equity, or
(2) The party against whom enforcement is sought would be unjustly enriched if enforcement of the transaction were denied; or
(3) The party against whom enforcement is sought is equitably estopped from asserting the deficiency. A party may be so estopped whenever, pursuant to the transaction and in good faith reliance thereon, the party claiming estoppel has changed his or her position to the party's substantial detriment under circumstances such that the detriment so incurred may not be effectively recovered otherwise than by enforcement of the transaction, and either:
(a) The grantee has been admitted into substantial possession or use of the premises ....
(b) The detriment so incurred was incurred with the prior knowing consent or approval of the party sought to be estopped.
Wis. Stat. § 706.04.
¶5. Here, both parties agree that requirements of Wis. Stat. § 706.02 have not been met. They dispute whether the trial court properly concluded that the oral agreement was enforceable under Wis. Stat. § 706.04. The Hubreds attack the trial court's conclusions that: (1) Schlueter "clearly and satisfactorily" proved the elements of the agreement; (2) the Hubreds would be unjustly enriched if they kept the farm; and (3) the Hubreds are equitably estopped from asserting the defense of lack of a written instrument. They also contend that Schlueter cannot enforce the agreement against Mr. Hubred because he never consented to it.
¶6. The trial court provided detailed findings of fact to support its conclusion that Wis. Stat. § 706.04 permits enforcement of the oral agreement. We review whether any credible evidence in the record supports the trial court's findings regarding these issues.
When the circuit court acts as the finder of fact, it is the ultimate arbiter of the credibility of the witnesses and the weight to be given to each witness's testimony. The reason for this rule is that the trier of fact had the opportunity to observe the witnesses and their demeanor. When more than one reasonable inference can be drawn from the credible evidence, the reviewing court must accept the inference drawn by the trier of fact.
State v. Peppertree Resort Villas, Inc., 2002 WI App 207, ¶19, 257 Wis. 2d 421, 651 N.W.2d 345 (citations omitted). We will reverse the trial court's credibility determination only if, as a matter of law, no fact finder could believe the testimony. Teubel v. Prime Dev., Inc., 2002 WI App 26, ¶13, 249 Wis. 2d 743, 641 N.W.2d 461, review denied, 2002 WI 23, 250 Wis. 2d 559, 643 N.W.2d 95 (Wis. Jan. 29, 2002) (No. 01-1098). We affirm the trial court's finding of fact unless clearly erroneous, and search the record for evidence to support those findings. In re Estate of Becker, 76 Wis. 2d 336, 347, 251 N.W.2d 431 (1997) (citation omitted); Wis. Stat. § 805.17(2). Even if evidence permits a contrary finding, we affirm the trial court's findings of fact "as long as the evidence would permit a reasonable person to make the finding." Sellers v. Sellers, 201 Wis. 2d 578, 586, 549 N.W.2d 481 (Ct. App. 1996).

Agreement Terms Proven
¶7. The Hubreds contend that no equitable remedy is available under Wis. Stat. § 706.04 because Schlueter did not prove the price and time elements clearly and satisfactorily. With regard to price, they primarily argue that the trial court "erred in giving any weight to Schlueter's testimony" and contend the evidence showed Schlueter's "propensity for lying." They also claim that the agreement fails for lack of definiteness of material terms, such as, which party would pay costs, taxes, and interest, while the Hubreds owned the property.
¶8. As to time, the Hubreds assert that nobody, including Schlueter, testified that the parties had set a specific time when the alleged option to repurchase would be exercised. They contend that the most definite timeline was "when [Schlueter] gets back on his feet," "someday," or "in two to three years." They concede that when a contract fails to specify a time for performance, the performance is to take place within a reasonable time. They argue, however, that it would be unreasonable for them to hold the land for Schlueter for several years because the alleged option did not account for any appreciation in the value of the land.
¶9. Schlueter asserts that the Hubred's banker verified that the parties had agreed that he would repurchase the farm for $215,000. Schlueter also contends that the agreement should not fail for indefiniteness of time because time was not of the essence. He argues that time was not of the essence because the parties were life-long family friends and that the Hubreds' initial motive was not to make a profit off the transaction.
¶10. Although the Hubreds testified that they never discussed the possibility of a buy back with Schlueter, the trial court found that their testimony was not credible. It explained that "[b]ecause others corroborate Mr. Schlueter's testimony, and the Hubreds' testimony is not credible, Mr. Schlueter's version of the events is accepted by the Court as more credible and worthy of belief." The record supports this finding. The Hubreds' banker testified that he recalled the parties set Schlueter's buy-back price at $215,000, or for whatever price they purchased it, to be paid in about two years. Their accountant also verified the Hubreds' intention to resell the property to Schlueter, but could not recall a specific time for the sale or price. Therefore, the trial court's finding that the elements of the agreement were clearly and satisfactorily proven is not clearly erroneous.

Unjust Enrichment
¶11. The trial court ordered equitable relief under Wis. Stat. § 706.04(2). The Hubreds contend that documents show they paid some of Schlueter's expenses while they owned the farm. They argue that each party benefited equally from the arrangement. They also assert that Schlueter's only evidence of unjust enrichment was his testimony, with only minimal supporting documentation. They argue such evidence is not clear, satisfactory, and convincing.
¶12. To prove unjust enrichment, the party seeking to enforce the agreement must prove: (1) a benefit conferred on the defendant by the plaintiff; (2) an appreciation or knowledge by the defendant of the benefit, and (3) acceptance or retention by the defendant of the benefit under circumstances making it inequitable for the defendant to retain the benefit without payment of its value. Puttkammer v. Minth, 83 Wis. 2d 686, 689, 266 N.W.2d 361 (1978). The benefit at issue here is the option to purchase the farm for $215,000 when its fair market value exceeded that amount. The Hubreds do not dispute that Schlueter assigned this benefit to them and that they had "an appreciation or knowledge" of it. They also do not dispute that Schlueter worked on the farm and made improvements after they took possession of it. Therefore, the dispute lies in whether allowing the Hubreds to retain the ownership of the farm would be unjust.
¶13. We will affirm the trial court's ultimate decision to grant Schlueter equitable relief if it examined the relevant facts, applied a proper standard of law, and using a demonstrated rational process, reached a conclusion that a reasonable judge could reach. Loy v. Bunderson, 107 Wis. 2d 400, 414-15, 320 N.W.2d 175 (1982).
¶14. The trial court concluded that the "Hubreds will be unjustly enriched if allowed to retain ownership of the Farm." It found that the Hubreds' testimony about the non-existence of an agreement was not credible. It found that the Hubreds kept "changing their characterization of the money remitted by Mr. Schlueter." It found that documents, such as their tax returns, actually impeached their prior testimony. It found that "[if] the Hubreds are allowed to retain ownership of the Farm, Mr. Schlueter will be left with tens of thousands of dollars less than what he had when he assigned the Option to Mrs. Hubred." Because the trial court is the arbiter of credibility, we will not reverse this finding.
¶15. The Hubreds also assert that Schlueter's improvements to the farm did not unjustly enrich them. They contend his repairs were the kind of upkeep that an employee or tenant would have made. But the trial court found that Schlueter's "actions go beyond those of an employee or tenant" because he made valuable improvements to the farm. It found that Schlueter "spent substantial sums of money and a large amount of his time making valuable improvements to the Farm." The record supports the trial court's itemization of those expenses; we are not persuaded that such a finding is clearly erroneous.
¶16. We conclude that the trial court examined the relevant facts and applied the proper standard of law in determining that the Hubreds will be unjustly enriched if the agreement is not enforced.

Mr. Hubred's Assent
¶17. The Hubreds contend that the transaction is unenforceable under Nelson v. Albrechtson, 93 Wis. 2d 552, 561, 287 N.W.2d 811 (1980), because Mrs. Hubred was not authorized to convey Mr. Hubred's property interest in the farm.[2] In Nelson, the trial court granted summary judgment and enforced an oral agreement for the sale of real estate against a husband and wife. Id. at 554. However, the wife, Mrs. Albrechtson, had submitted an affidavit alleging that she never agreed to convey her interest in the property. Id. at 561. The supreme court reversed, reasoning that the "[a]uthorization to act on behalf of another in a transaction for the sale of real estate may not be implied." Id. While Nelson prohibits finding an agency relationship from marital status alone, we disagree that it controls here. The facts of Nelson are significantly different. It was undisputed in Nelson that the buyers had "at no time discussed or arrived at any agreement" with Mrs. Albrechtson or even knew that she held an interest in the property. Id. at 559.
¶18. Conversely, Mr. Hubred knew Schlueter and admitted he was aware of his wife's sympathy for Schlueter's circumstances. He testified that he did not learn everything about the deal secondhand via his wife. He testified that he had some involvement in developing a business plan for the farm and reviewed the notes his wife took at her meetings with their banker and accountant. The record shows that two bank officials met with the parties, including Mr. Hubred, to discuss and execute the Hubreds' purchase of property that used to be Schlueter's farm. Schlueter testified that he discussed the agreement to repurchase the property at this meeting. The record does not show that Mr. Hubred objected to this arrangement at the time of the transaction.
¶19. Moreover, the Hubreds admitted they purposely closed the sale of the farm on Schlueter's birthday. Mrs. Hubred surprised Schlueter at his birthday party by presenting the closing documents to him. Mr. Hubred witnessed this exchange, but never objected. He also heard his wife tell a person at the party that Schlueter owned the farm. Years later, a boarder testified that she heard Mr. Hubred say he "didn't like horses, didn't want anything to do with horses and that they were hanging on to the farm until [Schlueter] could get on his feet and buy it back from them."
¶20. Because the wife in Nelson knew nothing about the transaction her husband made, while Mr. Hubred was present when his wife and Schlueter discussed the agreement and participated in the relationship without denying the agreement, Nelson does not resolve the issue here.
¶21. We find guidance in Smith v. Osborn, 66 Wis. 2d 264, 277-79, 223 N.W.2d 913 (1974). In that case, the supreme court found that a husband had acted as his wife's agent when negotiating the modification of a real estate conveyance. Id. at 279. There, the parties agreed that the wife, Mrs. Smith, had not been involved in the modification of the land contract. Id. at 277. She claimed that her husband had no authority to act as her agent and that she would have negotiated the deal differently. Id. The court explained how the marital relationship affects principles of agency:
In Wisconsin, there is no presumption of agency between a husband and wife merely by virtue of the martial relationship. However, the relationship between husband and wife is of such a nature that circumstances, which in the case of strangers would not indicate the creation of authority or apparent authority, may indicate it in the case of husband and wife.
Id. at 278 (citations omitted). The evidence showed that Mrs. Smith was involved in the business dealings such that her conduct "raise[d] the reasonable inference" that she gave her husband authority to act on her behalf and that she "had knowledge of the negotiations by her husband and made no objections thereto." Id. at 279. The court concluded that reasonable inferences indicated that an apparent agency relationship existed. Id.
¶22. Smith is consistent with the reasoning in Nelson. Nelson pertains to situations where the only evidence of agency is the marital relationship, whereas Smith explains that we examine the nature and circumstances of the financial arrangement to determine whether agency existed. Compare Nelson, 93 Wis. 2d at 561, with Smith, 66 Wis. 2d at 278.
¶23. Mr. Hubred's conduct after Schlueter conveyed the option to purchase the farm raises the reasonable inference that he at least ratified the agreement, if not directly consented to it. The trial court found that Mr. Hubred "said that he didn't want anything to do with the Farm; that he didn't even like horses; and that he would be glad when Mr. Schlueter was able to buy back the Farm." It also found that "Mrs. Hubred stated she and Mr. Hubred were trying to help Mr. Schlueter to get his farm back." The record supports these findings.
¶24. As in Smith, the circumstances of the parties' relationships here permit the reasonable inference that Mr. Hubred knew about Mrs. Hubred's agreement with Schlueter and did not object to it. Likewise, the facts of this case raise the reasonable inference that Mrs. Hubred had authority to act as Mr. Hubred's agent as she negotiated the terms of land conveyance with Schlueter. We conclude an agency relationship existed between Mrs. and Mr. Hubred.

CONCLUSION
¶25. We conclude that equitable relief lies under Wis. Stat. § 706.04(2). We need not address the Hubreds' arguments pertaining to Wis. Stat. § 706.04(3) or the constructive trust because § 706.04(2) provides an equitable resolution. We reject the Hubreds' argument that Mr. Hubred did not authorize Mrs. Hubred's agreement with Schlueter.
By the Court.  Judgment affirmed.
NOTES
[1] All references to the Wisconsin Statutes are to the 2001-02 version unless otherwise noted.
[2] The Hubreds fail to inform us what property interest Mr. Hubred holds. The deed is not in the record. At trial, Mr. Hubred referred to the farm as property that he owns. On appeal, Schlueter has not disputed that Mr. Hubred has a property interest and argues that the Hubreds hold the farm as marital property. The parties agree that Mr. Hubred holds some kind of property interest in the farm.